DANIEL L. DYSART, Judge.
| T Defendant-appellant, Hospital Housekeeping Systems, Ltd. (“HHS”), appeals from a trial court judgment in favor plaintiff-appellee, Edith Sassone. For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
In late December, 2004, Edith Sassone’s husband was hospitalized at Lindy Boggs Medical Center (“LBMC”) for treatment of pneumonia and bronchitis. Mrs. Sas-sone stayed with her husband at LBMC from the time that he was admitted until the time of the accident made subject of this lawsuit.
On the morning of December 28, 2004, as Mrs. Sassone proceeded towards a bedside table to answer a telephone, she slipped on a liquid substance and fell to the floor. As a result of her fall, Mrs. Sassone fractured her shoulder.
At the time of the accident, HHS provided janitorial services to LBMC. Accord *1245 ing to the trial testimony, an HHS employee, Shirelle Hymes, had mopped the floor of Mr. Sassone’s room at some time prior to, and evidently shortly before, Mrs. Sas-sone’s fall.
12Suit was originally filed against HHS and LBMC and was later amended to name LBMC’s proper entity, Tenet Mid-City Medical, d/b/a LBMC, and to add Ms. Hymes as a defendant.[1] LMBC was voluntarily dismissed with prejudice on June 29, 2011.
A bench trial was held on May 23-24, 2011. By judgment dated September 7, 2011, the trial court ruled in Mrs. Sas-sone’s favor and awarded general damages of $60,000, which was reduced to $50,000 pursuant to a pre-trial stipulation of the parties. The trial court’s Reasons for Judgment make the following findings:
Defendant asserts that when a housekeeper enters a hospital room and mops the floor, this creates an open and obvious danger, which they do not owe a duty to protect or warn against. This Court disagrees. Although Mr. Sassone testified that he saw the housekeeper enter the room and begin mopping the floor, Mrs. Sassone was clear in her testimony, that she did not see her. Further, despite protocol which requires the housekeeper to announce her presence and place a warning sign, both Mr. and Mrs. Sassone testified that she did neither, and this testimony was uncon-tradicted [sic]. The Court finds that, considering the location and circumstances surrounding this incident, defendant had a duty to protect persons in Mrs. Sassone’s position from just these types of incidents, and breached that duty. Further, this Court does not find any fault on the part of Mrs. Sassone.
HHS has timely appealed this judgment.
STANDARD OF REVIEW
HHS urges this court to review this record on a de novo basis.[2] While appellate courts review both fact and law, it is well-settled that the applicable [.^standard of review for a factual finding is the manifestly erroneous or clearly wrong standard. S.J. v. Lafayette Parish School Bd., 2009-2195, p. 13 (La.7/6/10), 41 So.3d 1119. 1128. It is equally well-settled that an appellate court may not set aside a trial court’s finding of fact in the absence of manifest error or unless it is clearly wrong, and where two permissible views of the evidence exist, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong. Cole v. State Department of Public Safety & Corrections, 01-2123, p. 14 (La.9/4/02), 825 So.2d 1134, 1144, citing Stobart v. State through Dept, of Transp. and Dev., 617 So.2d 880 (La.1993). As the S.J. court stated, “[i]n applying the manifestly erroneous — clearly wrong standard to the findings ... appellate courts must constantly have in mind that their initial review function is not to decide factual issues de novo.” Id., p. 13, 41 So.3d at 1128, quoting Rosell v. ESCO, 549 So.2d at 844.
*1246 Thus, in order to reverse a fact-finder’s determination under this standard of review, “an appellate court must undertake a two-part inquiry: (1) the court must find from the record that a reasonable factual basis does not exist for the finding of the trier of fact; and (2) the court must further determine the record establishes the finding is clearly wrong” (citation omitted). Id., p. 12, 41 So.3d at 1127. As the Louisiana Supreme Court succinctly stated in Rosell v. ESCO, 549 So.2d 840, 844-845 (La.1989):
When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact’s findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what |4is said. Where documents or objective evidence so contradict a witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness’s story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a fact-finder’s finding is based on its decision to credit the testimony of one or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong, (citations omitted).
Thus, we must determine whether the trial court judge’s factual conclusions in this matter had a reasonable factual basis or are dearly wrong.
DISCUSSION
HHS raises thirteen issues for review; however, the only real issue in this matter is whether the trial court erred in its factual findings concerning whether Mrs. Sassone was, or should have been, aware that Ms. Hymes had recently mopped the floor in her husband’s hospital room. HHS maintains that the only logical conclusion from the testimony of the witnesses at trial is that Mrs. Sassone knew that the floor on which she fell was wet, yet rushed to answer a ringing telephone anyway. HHS submits that the wet floor was an obvious danger and that accident was, therefore, caused by Mrs. Sas-sone’s own fault, or at the least, by her comparative fault. While this may be one possible view of the evidence at trial, the trial court clearly rejected these factual findings.
At trial, three witnesses were called to testify as to the accident itself: Mrs. Sas-sone, Mr. Sassone (whose deposition was entered into evidence as he passed away prior to trial) and James Butler, the former housekeeping director for HSS at |5LBMC.[3] In addition, the parties stipulated to the admissibility of Ms. Hymes’ written statement as Ms. Hymes did not testify at trial. Guided by our appellate standard of review and the great deference accorded to the trial court,[4] we do not find the trial court’s findings to be clearly wrong or without a reasonable factual basis. See, e.g. Rosell, supra.
James Butler (who did not witness the accident) testified that LBMC’s protocol was for its housekeepers to ask family members for permission to mop patients’ rooms. However, neither the incident report prepared by Mr. Butler shortly after the accident, nor Ms. Hymes’ statement *1247 reflect that permission was sought from either Mr. or Mrs. Sassone to mop the floor. As such, there is no evidence in the record that Ms. Hymes complied with HHS’s protocol in this regard. To the contrary, both Mr. and Mrs. Sassone testified that Ms. Hymes did not speak to them prior to mopping the floor.
Similarly, while Mr. Butler testified that there was a wet floor sign at the door, he admitted that he did not know when the sign was placed there. While Ms. Hymes’ statement indicates that “[her] wet floor sign was placed at the door,” there is no indication as to when it was placed there, or whether it was clearly visible to Mrs. Sassone. In her testimony, Mrs. Sassone indicated that she never saw the sign, and her husband testified that Ms. Hymes did not put any kind of sign in the room before Mrs. Sassone’s fall.
With respect to the actual events leading up to the fall, again, the trial court considered three versions. In her limited statement, Ms. Hymes noted that Mrs. | fiSassone was sitting in a chair by the door while she was mopping the floor. The phone rang and Mrs. Sassone proceeded towards it, at which time, she slipped and fell.
In his deposition, Mr. Sassone appeared to be somewhat confused. When first asked where his wife was when Ms. Hymes entered the room, he testified that she was on the side of his bed, but could not recall which side. He then testified that she was facing “[a]way from the door.” At that time, according to Mr. Sassone, she was “straightening out the bed ... fixing the pillow and making sure [he] was comfortable.” Later, he testified that his wife was on the right side of the bed while Ms. Hymes mopped the left side. When questioned whether his wife was facing Ms. Hymes while she was mopping on the left side, he stated “[n]o. She was facing the bed.”
Mr. Sassone’s testimony as to whether his wife saw Ms. Hymes was equivocal. He first testified that he “guessfed]” his wife “had to” have seen her although at the same time, he stated that he did not know.
According to Mrs. Sassone’s testimony, as she had for several nights, she slept on a “sleeper chair” the night before the accident. That morning, she pushed the chair from the side of the bed to the opposite side of the room. The phone then rang and, as she proceeded towards the end table, she slipped on a wet substance on the floor. Mrs. Sassone was adamant that Ms. Hymes never spoke to her and that she was unaware of her presence in the room prior to her fall. While Mrs. Sas-sone’s supplemental discovery responses, introduced at trial reflect a different version of the accident, namely that she had been “sitting in a chair in her husband’s room and, when she got up to answer the telephone, she slipped and fell on a foreign substance/liquid on the floor,” we note that her response also directs |7the parties to “see [her] deposition for more detailed discussion.” Defendant suggests that Mrs. Sassone’s discovery responses are inconsistent with her trial testimony; however, HHS did not impeach Mrs. Sassone with any testimony from her deposition in which she stated that the accident occurred in a different manner than that to which she testified at trial.
Finally, we note that Mr. Butler’s incident report indicates that Mrs. Sassone had been sitting in a chair and, “knowing the floor was wet,” went to answer the phone. Again, he did not witness the accident, and he admitted that he did not know what Mrs. Sassone actually knew at the time of the accident. He did not speak with Mrs. Sassone about the accident, as she had already been moved when he arrived on the scene.
*1248 HHS maintains that Mrs. Sassone’s denial of seeing Ms. Hymes before the accident is self-serving and her version of the accident “so preposterous that no reasonable fact finder could believe.” We disagree. Mrs. Sassone’s testimony was abundantly clear — she did not see Mrs. Hymes at any time prior to her fall. As a practical matter, we are mindful of the flurry of activity taking place in hospitals on a daily basis. As both Mr. and Mrs. Sassone indicated, at no time prior to entering the room did Ms. Hymes speak with them; she neither announced her presence nor her intention of mopping the floor.
A review of the record in its entirety demonstrates that the trial court’s findings are reasonable in light of that record. Because a fact finder’s choice between two (or more) permissible views of the evidence cannot be manifestly |serroneous or clearly wrong,[5] we cannot but find no error in the trial court’s judgment which we affirm.
AFFIRMED

. The record does not show that service was obtained on Ms. Hymes or that an answer was filed on her behalf.

. HHS cites the case of McCord v. West, 07-958, (La.App. 5 Cir. 3/25/08), 983 So.2d 133, for its position that a de novo review is warranted. That case dealt with a trial court’s grant of a partial summary judgment. Indeed, appellate courts review a trial court’s grant or denial of a motion for summary judgment de novo using the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate. La. C.C.P. art. 966; Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991). This appeal does not deal with a summary judgment and a de novo review is inappropriate.

. Expert medical witnesses testified as well; however, neither party challenges the damages award and we need not address the injuries aspect of this case.

. See, Watters v. Dept. of Social Services, 08-0977, p. 16 (La.App. 4 Cir. 6/17/09), 15 So.3d 1128, 1142, citing Rosell, supra 549 So.2d at 844 (La.1989).

. See McCaskill v. Rosiere, 2009-0323, p. 6 (La.App. 4 Cir. 8/24/09), 20 So.3d 496, 500.