JAMES F. McKAY III, Judge.
_JjThe appellant, Lake Marina Tower Condominium Association, Inc., appeals the judgment of the trial court finding in favor of Lifetime Construction L.L.C. in the amount of $10,000.00 pursuant to the penalty provision on the dehumidification contract plus attorneys’ fees in the amount of $9,716.50.
The appellee/cross-appellant, Lifetime Construction L.L.C., appeals the trial court’s judgment denying its claims for damages pursuant to the air sampler contract and moldguard contract and the dismissal of it’s claims with prejudice, and the order that each party bear its own costs.
For the reasons that follow we affirm the trial court’s judgment but amend it to include the awarding of judicial interest on the judgment from the date of demand, April 2, 2008, as prayed for by Lifetime Construction L.L.C.
FACTS AND PROCEDURAL HISTORY
In August of 2005, as result of the effects of Hurricane Katrina, Lake Marina Towers (“LMT”), located at 800 Lake Marina Drive, in New Orleans sustained | ¡¡damage to both its common areas and numerous individual units. Lake Marina Tower Condominium Association Inc. (“Association”) is governed by its articles of incorporation and the association’s board of directors. The Association, through its then president, Francis DeBlanc, contracted with Lifetime Construction L.L.C. (“Lifetime”) (formally d/b/a/ COHPS L.L.C.) to perform construction services for the Association.[1]
Hanover Insurance Company (“Hanover”) was the insurer for LMT. Lifetime, acting through a co-owner Richard Kee-ney, reached an agreement with the Association, acting through President Francis DeBlanc, that insurance proceeds would be paid directly to Lifetime for the initial demolition and rebuild work; individual condominium unit owners were free to contract with a contractor of their preference or hire Lifetime to perform work on their units. When Lifetime began its work, during November-December 2005, this direct payment to Lifetime by the Association was the insurance payment procedure that was followed. The work done under this initial agreement resulted in the first lawsuit (“Suit # 1”) between the parties being filed by Lifetime on February 1, 2007. That suit settled in a compromise and consequently did not proceed to trial.[2] The basis of Suit # 1 was an assertion that Lifetime was owed $209,900.00 for work that it had completed but had not been paid for by the Association or the individual condo owners even though Hanover had already funded substantial dollars for Lifetime’s |3work to the Association. After Suit # 1 was filed, the balance owed to Lifetime had been paid down from$209,-000.00 to approximately $19,000.00.
Wayne Jablonowski, pursuant to the Declaration of Condominium Regime § 21(e), was appointed by the Association to act as Insurance Trustee. Bill LeCorgne was appointed to inspect and approve all construction work done by Lifetime or other contractors (selected by individual unit owners). In theory, Bill LeCorgne was to submit reports to Wayne Jablonowski who would then issue checks to Lifetime and various other contractors for the approved work.
*113 As Lifetime was performing its initial inspection work, which was followed by demolition and remodeling work, it became apparent to all parties that dehumi-dification services, air sampling, and moldguard/firestopping services were required to return LMT to its proper condition. Lifetime performed some initial services through Tom Ponthieux, who had agreed to do a walk through with Hanover insurance adjusters to assess the damages and determine the remedial work that was necessary such as water damage, demolition work, moisture control, dehumidification and rebuilding work. Lifetime contends that it did not bill/invoice the Association for these initial inspections. As a result of these initial inspections, Lifetime asserts that the parties entered into three contracts. These three contracts were a dehumidification contract, executed on January 6, 2006, which provided for the installation of dehumidifiers; an air sampling contract, which Lifetime maintains was executed on January 12, 2006; and a moldguard/fires-topping services contract, which was signed on February 25, 2006. | ¿Lifetime maintains that all of these contracts provided that a general conditions provision applied as evidenced by an attached signed and dated document. In part, this general conditions provision provided for termination penalties of 15% of the remaining contract cost or at least $10,000.00 for each contract. Lifetime avers that although it was eventually paid in part for each of the three contracts, the Association wrongfully terminated its services, under the contracts, during the spring/summer of 2006. The record before us indicates that the Association, at its January 6, 2006 meeting, approved COHPS (Lifetime’s predecessor) to do de-humidification and air quality testing.
Based on the actions of the Association’s newly elected board of directors, Lifetime filed a second lawsuit, the case sub judice, for breach of contract against the Association on April 2, 2008.[3] A bench trial was held on March 21, 2011, with a judgment rendered on December 14, 2011.
ASSIGNMENTS OF ERROR
On appeal, the Association asserts two assignments of error: 1.) the trial court erred in finding that Francis DeBlanc had the authority to bind the Association to alleged contracts with Lifetime; and 2.) the trial court erred in awarding Lifetime $9,716.50 in attorney’s fees.
In its cross-appeal, Lifetime raises the following two assignments of error: 1.) the trial court erred in failing to award judicial interest from the date of demand on its award of $10,000.00 pursuant to the penalty provision of the dehumidification contract and as prayed for in its petition for damages; and 2.) the atrial court erred in denying its claims for damages based on the Association’s breach and improper termination of the air sampling contract and the moldguard contract.
STANDARD OF REVIEW
While appellate courts review both fact and law, it is well-settled that the applicable standard of review for a factual finding is the manifestly erroneous or clearly wrong standard. S.J. v. Lafayette Parish School Bd., 09-2195, p. 13 (La.7/6/10), 41 So.3d 1119, 1128. It is equally well-settled that an appellate court may not set aside a trial court’s finding of fact in the absence of manifest error or unless it is clearly wrong, and where two permissible views of the evidence exist, the *114 fact finder’s choice between them cannot be manifestly erroneous or clearly wrong. Cole v. State, Department of Public Safety & Corrections, 01-2128, pp. 13-14 (La.9/4/02), 825 So.2d 1134, 1144, citing Stobart v. State through Dept. of Transp. and Dev., 617 So.2d 880 (La.1993). As the S.J. Court stated, “[i]n applying the manifestly erroneous clearly wrong standard to the findings ... appellate courts must constantly have in mind that their initial review function is not to decide factual issues de novo.” Id., p. 13, 41 So.3d at 1128, quoting Rosell v. ESCO, 549 So.2d 840, 844, (La.1989). Thus, in order to reverse a factfinder’s determination under this standard of review, “an appellate court must undertake a two-part inquiry: (1) the court must find from the record that a reasonable factual basis does not exist for the finding of the trier of fact; and (2) the court must further determine the record establishes the finding is clearly wrong” (citation omitted). Id., p. 12, 41 So.3d at 1127.
|6Thus, we must determine whether the trial court judge’s factual conclusions in this matter had a reasonable factual basis or are clearly wrong. Sassone v. Doe, 11-1821, p. 3 (La.App. 4 Cir. 5/23/12), 96 So.3d 1243, 1245-46.
We find that the trial court’s judgment was based squarely on factual and credibility determinations. As, such we will review this matter using a manifestly erroneous, clearly wrong standard of review.
DISCUSSION
The trial court in its reasons for judgment noted that:
The Declaration of Condominium Regime, Section 21(e), requires the association, in this situation, to retain an Insurance Trustee and all plans and specifications are to be submitted to and said Trustee for approval and payment.
Prior to retaining an Insurance Trustee, the Association at its January 5, 2006 meeting approved COHPS (plaintiffs predecessor), to do dehumidification and air quality testing.
The court finds that the Association through its then president, Francis De-Blanc, signed the contract for installation of dehumidifier and COHPS General Conditions on January 6, 2006, thus the basis for its judgment.
As to the other contracts, the court does not find that the General Conditions were signed and those claims are dismissed.
According to plaintiffs exhibits 28 and 29, the total fee incurred for pursuing this suit through trial was $13,885. The court reviewed the aforementioned exhibits in an attempt to ascertain what time and effort were used on the dehumidifier contract only. It was unable to do so. Therefore, the court exercised its discretion and awarded 70% of the total or $9,716.50 as reasonable attorney fees.
The Association in its first assignment of error asserts that the trial court erred in finding that Francis DeBlanc had the authority to bind the Association into contracts with Lifetime.
Louisiana courts have jurispruden-tially recognized the common law doctrine of apparent authority. The judicial understanding of the principles of apparent authority is analogous to the concept of putative mandatary set forth in La. C.C. 17art. 3021. See Walton Constr. Co., L.L.C. v. G.M. Horne & Co., Inc., 07-0145, p. 12 (La.App. 1 Cir. 2/20/08), 984 So.2d 827, 835-36. Under this theory, an agent is empowered to bind his principal in a transaction with a third person when the principal has made a manifestation to the third person, or to the community of which the third person is a member, that the agent is *115 authorized to engage in the particular transaction. Id.
Louisiana jurisprudence created the doctrine of apparent authority in an effort to protect third parties “unauthorized acts of an apparent agent.” Boulos v. Morrison, 503 So.2d 1, 3 (La.1987). An agency relationship may be created by express agreement under Civil Code article 2985 or, when necessary to protect innocent third parties, it may be implied to exist under the apparent authority granted by the principal. Under the doctrine of apparent authority, an agency relationship may be formed even without the intent to do so. Anderson Window & Patio Co. v. Dumas, 560 So.2d 971, 975 (La.App. 4th Cir.1990). While a third party may not blindly rely upon an agent’s assertions of authority, if the principal’s words and conduct under the particular facts of the ease give the third party the reasonable belief that an agent has the authority to act for the principal, an agency relationship will be implied. Boulos, 503 So.2d at 3; See Salley v. Colonial Marine Indus., Inc., 95-2215, p. 15 (La.App. 4 Cir. 9/11/96), 680 So.2d 1242, 1250.
Here, it is undisputed that Francis DeBlanc was the president of the Association immediately following Hurricane Katrina until early 2006. It was Francis DeBlanc, acting in his capacity as president of the Association who [ ^initially met with Richard Keeney and Tom Ponthieux to facilitate the assessment of damage post-Katrina to LMT. It is implicit, as obviated by the Association’s actions, that there was work being performed and paid for by the Association to Lifetime from Hanover insurance proceeds. Clearly, the Association’s actions after the execution of the dehumidification contract, which was proposed and authorized during Francis DeBlanc’s tenure as president, indicates that the Association was a willing contracting party and intended to be bound by the terms of the contract. Lifetime clearly did not need to look any further into Francis DeBlanc’s authority to bind the Association.
The Association argues that the contract did not follow the procedures under the directives of the Declaration of Condominium Regime § 21(e) which it asserts needed the approval of Wayne Jablonowski, who was the acting insurance trustee for the Association, before contracting with Lifetime or paying Lifetime for its services. Wayne Jablonowski testified that he had a written contract with the Association, signed by Francis DeBlanc, as acting president of the Association. Yet, the actions of the Association demonstrate that if, and we emphasize if, the procedures pursuant to the Declaration of Condominium Regime § 21(e), were not followed, the Association’s board acquiesced to the authority of Francis DeBlanc, who was acting in capacity as president. As we noted above, the record before us indicates that the Association, at its January 6, 2006 meeting approved COHPS (Lifetime’s predecessor), to do dehumidification and air quality testing. However, the record is unclear as to the exact extent of Wayne Jablonowski’s involvement in 19the process. What is evident is that work was performed, bills were issued and monies were paid to Lifetime by the Association from insurance proceeds on the contracts in question. Consequently, it was reasonable for Lifetime to have relied on Francis De-Blanc’s authority to contractually bind the Association despite the Association’s invocation of the condominium regime clause. The question of the legitimacy of the contracts or Lifetime proving their damages does not hinge on Francis DeBlanc’s authority to bind the Association. The Association’s argument that Francis DeBlanc did not have the authority to bind the *116 Association to contracts with Lifetime is without merit. Hence, the trial court properly held that the Association had in fact approved the dehumidification contract, that the Association entered into the contract and that it was binding and enforceable.
The Association also argues that the trial court erred in awarding Lifetime $9,716.50 in attorney’s fees.
The trial court is vested with great discretion in arriving at an award of attorneys’ fees. Troth Corp. v. Deutsch, Kerrigan & Stiles, L.L.P., 06-0457, p. 3 (La.App. 4 Cir. 1/24/07), 951 So.2d 1162, 1165 (citing Kem Search, Inc. v. Sheffield, 434 So.2d 1067, 1070 (La.1983)). The exercise of this discretion will not be reversed on appeal without a showing of clear abuse of discretion. Id.
Based on Rule 1.5(a) of the Rules of Professional Conduct, the Louisiana Supreme Court has itemized the following considerations for determining the reasonableness of attorneys’ fees: (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) amount of money | ,ninvolved; (5) extent and character of the work performed; (6) legal knowledge, attainment, and skill of the attorneys; (7) number of appearances made; (8) intricacies of the facts involved; (9) diligence and skill of counsel; and the (10) the court’s own knowledge. State, Dept. of Transp. & Dev. v. Williamson, 597 So.2d 439, 442 (La.1992). A reasonable attorney’s fee is determined by the facts of an individual case. Gottsegen v. Diagnostic Imaging Services, 95-977, p. 7 (La.App. 5 Cir. 3/13/96), 672 So.2d 940, 943. The trial court has the ultimate discretion to determine the amount of attorneys’ fees based on the court’s own knowledge, on the evidence, and on the court’s observation of the case and the record. See Custonir-Bilt Cabinet & Supply, Inc. v. Quality Built Cabinets, Inc., 32,441, p. 12 (La.App. 2 Cir. 12/8/99), 748 So.2d 594, 602-03. A court does not have to hear evidence concerning time spent or hourly rates charged in order to make an award since the record will reflect much of the services rendered. In re Andras, 410 So.2d 328, 331 (La.App. 4th Cir.1982); See Filson v. Windsor Court Hotel, 07-0756, p. 6-7 (La.App. 4 Cir. 7/23/08), 990 So.2d 63, 67.
Here, the trial court in its reasons for judgment recognized that there was a contract between the parties for dehumidi-fication but that it was unable to ascertain what time and effort were used on pursuing this suit on the dehumidification contract. The trial court in its reasons for judgment stated that: “the court exercised its discretion and awarded 70% of the total or $9,716.50 as reasonable attorney fees.” Based the above jurisprudence we cannot say that the trial court |T1was manifestly erroneous or clearly wrong in its ruling. Accordingly, we find no abuse of discretion in its findings.
Lifetime in its first assignment of error asserts that the trial court erred in failing to award interest from the date of judicial demand on its award of $10,000 pursuant to the penalty provision of the dehumidification contract and as prayed for in its petition for damages. We agree.
Lifetime, in its petition for damages pertinent to the alleged dehumidification, air sampling and moldguard/firestopping contracts on April, 2, 2008, specifically prayed for the recovery of legal interest. The trial court in its judgment found that the facts indicated that the parties entered into the dehumidification contract and that the penalty provisions of the dehumidification provision were proper. We agree with this decision. However, the trial *117 court failed to award the interest on Lifetime’s recovery.
To begin, La. C.C.P. art.1921 specifically states that “[t]he court shall award interest in the judgment as prayed for or as provided by law.” The Louisiana Code of Civil Procedure also provides for mandatory legal interest. The “shall” in article 1921 is mandatory, and the court lacks discretion to deny interest if interest is prayed for or is provided by law. In Bickham v. Bickham, 02-1307 (La.App. 1 Cir. 5/9/03), 849 So.2d 707, the First Circuit held that “[s]ince the word shall’ in statute providing that the court shall award interest in the judgment as prayed for or as provided by law* is mandatory, the court lacks discretion to deny interest if interest is prayed for or provided for by law.” Bickham v. Bickham, 02-1307, p. 5 (La.App. 1 Cir. 5/9/03), 849 So.2d 707, 710-711; Duplechain v. Jalili, 10-736, p. 8 112(La.App. 3 Cir. 12/8/10), 52 So.3d 1072, 1078-79, writ denied, 2011-0087 (La.3/25/11), 61 So.3d 664.
As there is merit to Lifetime’s argument, we amend the trial court’s judgment to award judicial interest from the date of demand, April 2, 2008, as prayed for by Lifetime Construction L.L.C.
Lifetime finally asserts in this second assignment of error that the trial court erred in denying its claims for damages based on the Association’s breach and improper termination of the air sampling contract and moldguard/firestopping contracts. Lifetime maintains that the trial court was correct in finding that Lifetime was entitled to a recovery based on a valid dehumidification contract but that it erred in denying its claims under the air sampling and moldguard/firestopping contracts. To reiterate, the trial obviously referencing the air sampling and mold-guarding/firestopping contracts, stated in its reasons for judgment that, “[a]s to the other contracts, the court does not find that the General Conditions were signed and those claims are dismissed.”
The record indicates that the trial court determined that the general conditions documents were not properly made part of the air sampling and moldguard contracts. After gleaning the record, it is unclear, based on assertions of questionable signatures and dates, that there was sufficient proof to conclude that the general condition documents were properly incorporated or properly attached to the two contracts in question. As such, we cannot disagree with the trial court’s determination.
Additionally, the trial court, in its judgment, found that the air sampler and mold-guard contracts were valid. It held that “IT IS FURTHER ORDERED, ADJUDICATED and DECREED, that Lifetime Construction claims for payment 11sof amounts allegedly due on the Air Sampler Contract and Moldguard Contract are denied and are hereby dismissed with prejudice and each party to bear it’s own cost.”
As the Association basically argues and the record before us demonstrates, the contracts in question were based on work Lifetime performed on a per unit basis and paid on an as-complete basis not a lump-sum. Lifetime’s actions during the time in question, pursuant to the contracts in question, and leading up to the instant matter, are consistent with working and being paid by the Association in a manner consistent with a per-unit, non-lump-sum arrangement. Lifetime failed to offer sufficient proof that the Association should be bound to pay the damages and penalties stipulated in the general conditions .documents that were not clearly incorporated into the air sampler and moldguard contracts.
*118 Finally, the trial court essentially found that Lifetime failed to present evidence to sufficiently support their proposition that the Association was in breach of the sampling and moldguard contracts or that it improperly terminated Lifetime’s services. We agree. Lifetime failed to provide sufficient evidence to prove, with reasonable certainty, that these contracts were breached or that there is sustainable proof that profits were lost. There is no merit to Lifetime’s assertion that the Association breached the contracts and that there are damages owed to Lifetime.
CONCLUSION
We cannot conclude from the record before this Court that the trial court erred in its judgment with the exception that it failed to award legal interest, as prayed for in Lifetime’s petition for damages. Accordingly, we affirm the 114judgment of the trial court and amend the judgment to include the awarding of judicial interests from the date of demand, April 2, 2008.
AFFIRMED AS AMENDED

. Tom Ponthieux and Richard Keeney are co-owners of Lifetime. Richard Keeney is also an individual unit owner.

. CDC case #2007-1043.

. Case # 2008-3577. This second suit was consolidated with Suit No. 1 2007-1043, prior to its resolution.