TERRI F. LOVE, Judge.
11 This appeal arises from a dispute on an open account. After the plaintiff was granted a default judgment for $12,470.00, plus interest, costs, and attorney’s fees, the defendant alleged that she was not properly served with the petition on an open account because her street address was misspelled by one letter. The defendant then filed a petition to annul judgment, which the trial court dismissed. We find that the trial court did not err in dismissing the petition to annul judgment because the evidence did not support the defendant’s contentions. The defendant received a demand letter by certified mail addressed to the misspelled street name as requested in the citation. In addition, service was attempted and no testimony or documentary evidence was given at trial to support that the defendant was travelling on the dates as alleged in her petition. Therefore, we affirm.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Diana Wilson Haik, M.D., retained the forensic accounting services of Harold A. Asher, CPA, LLC, (referred to as “Mr. Asher”) for use during her divorce proceedings. On March 24, 2004, Mr. Asher mailed Dr. Haik an agreement on services, which read as follows:
I will require a $5,000 payment in order to commence services. My fee for these services is $265 |2per hour, plus out-of-pocket costs. Availability for court time and depositions is $500 per hour. Fees are adjusted annually each January. You will be billed on a monthly basis and invoices are payable upon presentation. I reserve the right to discontinue services if fees are not paid as due.
This agreement constitutes the entire agreement made between the parties hereto, and it may be amended only by a document in writing, signed by the parties hereto.
Dr. Haik signed the agreement on March 30, 2004. A February 28, 2007 letter from Mr. Asher’s office to Dr. Haik detailing past accounting fees, as well as billing information, provided:
As requested, the amount paid by you in 2006 for accounting fees totals $24,054 (see attached schedule).
I also spoke with Mr. Asher regarding the billing issue we discussed today. He advised me that he agrees to charge you $250 per hour through February 28, 2007. However, effective March 1, 2007 the fee for services rendered by Mr. Asher [sic] your behalf will increase to $275 per hour.
On January 1, 2007 his standard hourly rate increased to $325. He has agreed to continue to discount your hourly rate and extend a $50 per hour reduction.
By 2009, Dr. Haik was allegedly indebted to Mr. Asher. On March 25, 2009, counsel for Mr. Asher mailed Dr. Haik a formal demand letter utilizing certified mail to:
Diana Haik, MD
8 Ravenne Lane
Natchez, MS 39120
*723 The demand letter, which it is undisputed that Dr. Haik received, alleged that Dr. Haik owed Mr. Asher $12,470.00. Invoices were attached to the demand letter that indicated that Mr. Asher’s rate was $350 per hour. The demand letter indicated that if the amount owed was paid within thirty days, “no further action will be Istaken.” However, the letter stated that “[i]f payment is not received within thirty days, suit will be filed for the full amount due along with costs and attorneys [sic] fees as provided by law.” Dr. Haik signed the certified mail receipt confirming her receipt of this letter with the address of “Ravenne Lane.”
Dr. Haik failed to tender payment within thirty days of the demand letter. Mr. Asher then filed a petition on open account against Dr. Haik alleging that she failed to pay for $12,470.00 in forensic accounting services. Mr. Asher mailed Dr. Haik, via certified mail,[1] a copy of the petition on open account on May 27, 2009. However, after three unsuccessful delivery attempts, the certified mail was marked unclaimed and returned. Mr. Asher then e-mailed the petition on open account to Dr. Haik’s sister-in-law, Suzanne Haik Terrell, Esq. Attorney Terrell initially replied to the demand letter, on behalf of Dr. Haik, in an effort to resolve the billing dispute.
Mr. Asher filed a motion for default against Dr. Haik for the unpaid services. The trial court granted the preliminary default. Dr. Haik did not file an answer or other responsive pleadings after the entry of the preliminary default. The trial court then confirmed the default judgment and issued a judgment against Dr. Haik in the amount of $12,470.00, plus interest from the date of judicial demand, and all costs of the proceeding. The trial court also ordered that Dr. Haik pay $1,200.00 in attorney’s fees.
Dr. Haik then filed a petition to annul judgment asserting that she was not properly served with the petition on the open account prior to the preliminary default and prior to confirming the default judgment. Dr. Haik also averred that |4she was travelling on the three days that service of the petition on the open account was attempted. Following contentious issues with discovery and the trial on the petition to annul judgment, the trial court dismissed the petition to annul judgment with prejudice and ordered each party to pay their own costs. Mr. Asher filed a petition for garnishment and requested the issuance of a writ of fieri facias. Dr. Haik’s appeal followed.
Dr. Haik asserts that the trial court erred in finding that she was properly served and contends that evidence demonstrates that Mr. Asher’s hourly rate was too high due to fraud or ill practice.

STANDARD OF REVIEW

When reviewing questions of fact as determined by the factfinder, be it a jury or a judge, appellate courts utilize the manifest error or clearly wrong standard of review. Sassone v. Doe, 11-1821, pp. 2-3 (La.App. 4 Cir. 5/23/12), 96 So.3d 1243, 1245. “[A]n appellate court may not set aside a trial court’s finding of fact in the absence of manifest error or unless it is clearly wrong, and where two permissible views of the evidence exist, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong.” Sassone, 11-1821, p. 3, 96 So.3d at 1245. In order to reverse findings of the factfinder, “an appellate court must undertake a two-part inquiry: (1) the court must find from the record that a reasonable factual basis *724 does not exist for the finding of the trier of fact; and (2) the court must further determine the record establishes the finding is clearly wrong.” S.J. v. Lafayette Parish Sch. Bd., 09-2195, p. 12 (La.7/6/10), 41 So.3d 1119, 1127. The Louisiana Supreme Court explained this Court’s role as follows:
[ultimately, the issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable Rone. Id. If the factual findings are reasonable in light of the record reviewed in its entirety, a reviewing court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Id. at 882-883. Accordingly, where there are two permissible views of the evidence, the fact-finder’s choice between them cannot be manifestly erroneous. Id. at 883.
S.J., 09-2195, pp. 12-13, 41 So.3d at 1127.
Conversely, appellate courts review questions of law using the de novo standard. Serou v. Touro Infirmary, 12-0089, p. 18 (La.App. 4 Cir. 1/9/13), 105 So.3d 1068, 1083.
The manifest error standard of review is also used for reviewing “mixed questions of law and fact.” Id., quoting Brasseaux v. Town of Mamou, 99-1584, pp. 7-8 (La.1/19/00), 752 So.2d 815, 820-21.
In addition, “[t]he trial court is permitted discretion in deciding when a judgment should be annulled because of fraud or ill practice.” Kem Search, Inc. v. Sheffield, 434 So.2d 1067, 1071 (La.1983). “However, the ambit of a trial judge’s discretion is determined by the reasons for its existence.” Id. Some “important reasons for deferring to the trial judge’s” discretion are the capability to observe the witnesses, the trial court’s “superior opportunity to get the ‘feel of the case,’ ” and “the impracticability of framing a rule of decision where many disparate factors must be weighed.” Id., quoting Cone v. West Virginia Pulp & Paper Co., 330 U.S. 212, 216, 67 S.Ct. 752, 755, 91 L.Ed. 849 (1947). (Citations omitted).

PETITION TO ANNUL JUDGMENT

Dr. Haik asserts that the trial court erred in dismissing her Petition to Annul Judgment based upon improper service and the price per hour that Mr. Asher | ^allegedly owed.
“The nullity of a final judgment may be demanded for vices of either form or substance, as provided in Articles 2002 through 2006.” La. C.C.P. art.2001. The Louisiana Code of Civil Procedure provides, in pertinent part, that:
A. A final judgment shall be annulled if it is rendered:
(1) Against an incompetent person not represented as required by law.
(2) Against a defendant who has not been served with process as required by law and who has not waived objection to jurisdiction, or against whom a valid judgment by default has not been taken.
(3) By a court which does not have jurisdiction over the subject matter of the suit.
La. C.C.P. art. 2002(A). The above provisions are mandatory. However, there are instances when the trial court has the discretion to annul a judgment. La. C.C.P. art. 2004 provides that:
A. A final judgment obtained by fraud or ill practices may be annulled.
B. An action to annul a judgment on these grounds must be brought within one year of the discovery by the plaintiff in the nullity action of the fraud or ill practices.
*725 C. The court may award reasonable attorney fees incurred by the prevailing party in an action to annul a judgment on these grounds.
This Court opined that:
[t]he rule settled by our jurisprudence is that, in the absence of a showing of a valid and sufficient reason for a defendant’s failure to defend a suit on which a default judgment has been taken, such a defendant cannot maintain an action for nullity of the default judgment based on alleged defenses of fraud or ill practices which could and should have been pleaded in the original suit.
Steele v. Ruiz, 202 So.2d 376, 378 (La.App. 4th Cir.1967).
Dr. Haik did not specifically allege fraud or ill practices in her Petition to Annul Judgment. However, the Louisiana Supreme Court stated that:
|7[o]ur jurisprudence sets forth two criteria to determine whether a judgment has been obtained by actionable fraud or ill practices: (1) when the circumstances under which the judgment was rendered show the deprivation of legal rights of the litigant who seeks relief, and (2) when the enforcement of the judgment would be unconscionable and inequitable.
[[Image here]]
Thus, the article is not limited to cases of actual fraud or intentional wrongdoing, but is sufficiently broad to encompass all situations wherein a judgment is rendered through some improper practice or procedure which operates, even innocently, to deprive the party cast in judgment of some legal right, and where the enforcement of the judgment would be unconscionable and inequitable.
Kem Search, 434 So.2d at 1070. “Conduct which prevents an opposing party from having an opportunity to appear or to assert a defense constitutes a deprivation of his legal rights.” Id.

Proper Service

Dr. Haik avers that Mr. Asher did not comply with La. R.S. 13:3205. Specifically, Dr. Haik contends that Mr. Asher violated § (1), which provides that:
[n]o default judgment can be rendered against the defendant and no hearing may be held on a contradictory motion, rule to show cause, or other summary proceeding, except for actions pursuant to R.S. 46:2131 et seq., until thirty days after the filing in the record of the affidavit of the individual who either:
(1) Mailed the process to the defendant, showing that it was enclosed in an envelope properly addressed to the defendant, with sufficient postage affixed, and the date it was deposited in the United States mail, to which shall be attached the return receipt of the defendant; or
La. R.S. 13:3205(1).
Dr. Haik, in her Petition to Annul Judgment, asserted that she did not receive a copy of the petition on open account by certified mail because she was allegedly travelling on the three days that delivery was attempted. Dr. Haik never claimed |sthe certified mail from the post office. At the hearing on the Petition to Annul Judgment, Dr. Haik contended that she did not receive the petition on open account because her address is 8 Ravenna Lane and not 8 Ravenne Lane, as addressed on the certified mail label.[2] Dr. Haik testified that she did not refuse ser *726 vice of the petition because she never received notice of the certified mail. However, it is undisputed that Dr. Haik received the demand letter via certified mail, and that the letter was addressed to 8 Ravenne Lane.
Erin McMahon, a paralegal in Mr. Ash-er’s attorney’s office, testified that Mr. Asher submitted 8 Ravenne Lane as Dr. Haik’s address. Ms. McMahon also stated that she researched the streets of Natchez, Mississippi, where Dr. Haik lives and found no other streets similar to Ravenne or Ravenna. Further, Ms. McMahon testified that she mailed the petition on the open account via certified mail to the same address as the demand letter.
Dr. Haik relies upon Clay v. Clay, 389 So.2d 31, 37 (La.1979), for the proposition that addressing the certified mail to Rav-enne Lane instead of Ravenna Lane violated the mandatory “strict compliance” with La. RS. 13:3205. This reliance is misplaced. In Clay, the long-arm service did not include a citation, as opposed to the simple misspelling of Dr. Haik’s address by one letter. Clay, 389 So.2d at 38. Likewise, White v. White, 398 So.2d 1257, 1259 (La.App. 4th Cir.1981), also relied upon by Dr. Haik, annulled a judgment due to a finding of lack of service. We find White distinguishable from the case sub judice because White lacked an affidavit of service. Id.
Dr. Haik was aware that she would be sued by Mr. Asher. The demand [3letter stated that if the amount requested was unpaid, then Mr. Asher would file a lawsuit for the full amount. Further, Dr. Haik’s sister-in-law, Attorney Terrell, attempted to work out a deal with Mr. Asher on Dr. Haik’s behalf.
“It is well established that a party may not defeat service by merely refusing to accept the letter containing the citation.” Dean v. Waters, 95-2352; 95-2365, p. 7 (La.App. 4 Cir. 12/14/95), 667 So.2d 1137, 1141. In Decca Leasing Corp. v. Torres, 465 So.2d 910, 914 (La.App. 2nd Cir.1985), the court acknowledged that avoiding the retrieval of certified mail could be tantamount to refusing service. However, the court stated that the record was insufficient to make that determination. Id. This Court held that in order for the refusal to claim certified mail that the United States Postal Service attempted to deliver three times to equate with service, an affidavit by counsel for plaintiff should be entered into the record in compliance with La. R.S. 13:3205(a). Dean, 95-2352; 95-2365, p. 7, 667 So.2d at 1141.
In the case sub judice, the person who effectuated the mailing of the petition on open account to Dr. Haik was Ms. McMahon. The record contains Ms. McMahon’s affidavit of service of process — long arm service, which includes the date the mail was sent out, the certified mail number, and the dates of the three unsuccessful delivery attempts.[3] A photocopy of the certified mailing address is attached showing that it was mailed to Dr. Haik at 8 Ravenne Lane.
The trial court stated in its reasons for judgment that:
[t]he evidence presented at trial simply does not support Dr. Haik’s contentions. She received a demand letter by certified mail addressed to the misspelled street name as requested in the citation. In addition, service was attempted, no testimony or documentary evidence [ inwas given at trial to support that she was travelling on the dates as alleged in her petition.
Based on the facts and circumstances of this case, we find that the trial court did *727 not err in its factual findings or abuse its discretion in dismissing Dr. Haik’s Petition to Annul Judgment. Therefore, we affirm.

Hourly Fee

Dr. Haik also contends that the record does not establish that Mr. Asher’s fee was $350 per hour.
Dr. Haik testified at the hearing that she did not sign any other document other than the original contract with a fee of $265 per hour. Dr. Haik further stated that the fee was never $350 per hour, as Mr. Asher claimed in the petition on open account. Dr. Haik thought she already paid Mr. Asher over $70,000.00 and she did not think she owed Mr. Asher any more money.
However, the contract signed by Dr. Haik in 2004 with a $265 per hour fee included the statement that “[flees are adjusted each January.” The February 28, 2007 letter demonstrates that Mr. Asher’s per hour fee increased to $325 on January 1, 2007.[4] Given that Dr. Haik received the demand letter in 2009, Mr. Asher would have made two additional fee adjustments.
“When the sum due is on an open account or a promissory note or other negotiable instrument, an affidavit of the correctness thereof shall be prima facie proof.” La. C.C.P. art. 1702(B)(3). Mr. Asher’s affidavit states that Dr. Haik owed him $12,470.00. This serves as prima fa-cie proof of the alleged debt. Accordingly, given Mr. Asher’s yearly fee adjustment, evidence supporting that Mr. Asher did increase his fees, and Mr. Asher’s affidavit, we find that the trial |ncourt did not err in dismissing the petition to annul judgment, as there is no evidence of fraud or improper practice.

DECREE

For the above-mentioned reasons, we find that the trial court did not err in dismissing Dr. Haik’s Petition to Annul Judgment because the record fails to support her assertions. Therefore, we affirm.
AFFIRMED

. While the petition on open account provides that Dr. Haik's address is 8 Roseanne Lane, the certified mail address was addressed to 8 Ravenne Lane.

. Dr. Haik did not re-assert her original contention that she was travelling on the attempted delivery dates, which was in her petition.

. No such evidence was present in the White record.

. At that time, Mr. Asher was giving Dr. Haik an hourly discount.