PATRICIA RIVET MURRAY, Judge.
 

 |! This is a post-divorce matter. This appeal arises out of a rule to modify final spousal support filed by Louis Poore and a rule for contempt filed by his former wife, Nina Williams. From a judgment granting Mr. Poore’s rule to modify the spousal support, Ms. Williams appeals. For the reasons that follow, we affirm.
 

 FACTUAL AND PROCEDURAL BACKGROUND
 

 On September 14, 1998, Mr. Poore and Ms. Williams were divorced after thirty-three years of marriage. At the time of the divorce, the parties had two major children.
 
 [1]
 
 On the same date as the divorce, the parties entered into a consent judgment that provided for Mr. Poore to pay Ms. Williams permanent spousal support in the amount of $1,500.00 per month. The consent judgment provided as follows:
 

 IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Louis Patrie Poore pay to Nina Day Williams Poore permanent spousal support in the amount of $1,500.00 per month beginning on August 1, 1998, and continuing thereafter until such time as Nina Day Williams Poore remarries or dies.
 

 LIT IS HEREBY FURTHER ORDERED, ADJUDGED AND DECREED that both parties hereto are responsible for all of their other ex
 
 *955
 
 penses including but not limited to medical and dental expenses, medical and dental insurance, and automobile insurance. The only financial obligations between the parties hereto is the $1,500.00 per month in permanent spousal support set forth hereinabove which is payable by Louis Patrie Poore to Nina Day Williams Poore.
 

 AS FURTHER CONSIDERATION for this Consent Agreement the parties hereto specifically agree that neither party will discuss their personal lives during the marriage or anything that personally regarded either party during the marriage with any third parties, particularly, the parties hereto agree that they will not discuss any matters that occurred during their marriage with the employer of either party hereto and the parties to this consent judgment understand that this is an integral part of this consent judgment and should this confidentiality provision be violated by either party, said violation will be considered a direct breech [ (sic) ] of this consent judgment.
 

 From 1998 to 2009, Mr. Poore complied with the requirement of the consent judgment that he pay monthly spousal support to Ms. Williams.
 

 On July 21, 2009, Ms. Williams filed a Rule for Contempt based on Mr. Poore’s failure to pay the spousal support. At that time, Mr. Poore was $5,750.00 in arrears. On August 17, 2009, a hearing was held on the Motion for Contempt. On September 3, 2009, the trial court rendered judgment in favor of Ms. Williams, finding that Mr. Poore was in contempt and that he was $8,750.00 in arrears. The trial court made that amount executory.
 

 On November 12, 2009, Mr. Poore filed a Rule to Terminate or Reduce Spousal Support. He alleged that since the consent judgment was entered into there has been a substantial change in his circumstances based on the following:
 

 • Mr. Poore “lost his job with his employer through ‘no fault’ of his own;” rather, he “lost his job due to a huge down turn in the national economy;”
 

 • Ms. Williams “has done very well in that she has collected at least $180,000” from him over the last ten years;
 

 Is* “The period of time for the recipient [Ms. Williams] to adjust to the divorce is long past due;”
 

 • “The recipient [Ms. Williams] at this time is in a better financial place than mover [Mr. Poore] and the support herein is no longer necessary;” and
 

 • Ms. Williams “has a long history of employment and is able to care for herself.”
 

 On March 1, 2010, Ms. Williams filed another Motion for Contempt.
 

 On March 11, 2010, Mr. Poore’s Rule to Terminate or Reduce Spousal Support was heard. On March 24, 2010, the trial court rendered judgment denying Mr. Poore’s rule to terminate spousal support. The trial court found that the parties’ consent judgment regarding permanent spousal support could not be terminated, but it could be modified because it “did not expressly preclude reduction of alimony.” The trial court set a hearing for April 21, 2010, to allow the parties to submit evidence regarding Mr. Poore’s rule to modify spousal support — to allow “Mr. Poore to offer evidence on whether there has been a material change in circumstances since the agreement was confected.”
 

 At the April 21, 2010 hearing, both parties testified and presented evidence. Mr. Poore, who was sixty-six years old at the time of the hearing, testified that he is an operations person for a travel agency. In November 2009, he lost his job at Carlson
 
 *956
 
 Wagonlit Travel. He was terminated due to the bad economy. At the time he was terminated, he had been employed by Carlson for nineteen years and was earning $98,000.00 per year. As a result of losing his job, Mr. Poore testified that he was unable to continue paying the spousal support to Ms. Williams or, as discussed below, to continue providing financial support to his major son, Christopher Poore.
 

 14From August 1998 until November 2009, with one slight exception, Mr. Poore testified that he faithfully paid Ms. Williams the $1,500.00 monthly spousal support. The exception was that he became slightly behind on the spousal support payments from March to September 2009. However, he paid the arrearages when he received a severance package from Carlson equal to six months of his salary. He estimated the net amount of the severance package was $24,000.00, and the gross amount was $41,000.00. Mr. Poore admitted that he had not paid any spousal support from November 2009 through the date of the hearing, April 2010, resulting in another arrearage.
 

 On January 4, 2010, Mr. Poore was rehired by another company, Travelcorp International. He testified that his salary at Travelcorp is forty percent less than he was earning at Carlson. At Travelcorp, his annual salary is $60,000.00. According to Mr. Poore, his present salary is less than he was earning at the time of the 1998 consent judgment. In 1998, he was earning about $75,000.00 to $80,000.00 per year plus bonuses. His records from 1998 were destroyed as a result of Hurricane Katrina.
 

 According to the Monthly Finance Overview that Mr. Poore introduced at the hearing, his current income is $6,945.17 per month. His current income is derived from the following six sources: $8,356.86 (Travelcorp net monthly salary); $2,099.00 (Social Security benefits); $885.79 (Met-Life annuity); $103.52 (pension); $250.00 (Travelcorp car allowance); and $750.00 (current wife’s estimated salary from her part-time job).
 

 Mr. Poore testified that since 1998 his expenses have increased dramatically and that his current monthly expenses exceed his current monthly income. According to his Monthly Finance Overview, his current expenses total $7,788.95, |5plus the $1,500.00 spousal support at issue. He has a first and second mortgage on his home (which total $1,936.34 a month). However, his biggest current expense ($3,106.00 a month) arises from the monthly payments on his eight major credit cards on which he has accumulated large balances. He testified that he was able to work out an arrangement with each of his credit card companies for a sixty-month pay off plan with significantly reduced interest rates.
 

 Mr. Poore explained that the large credit card balances primarily were due to his use of the cash advance feature to obtain money to assist his major son, Christopher Poore, who was having financial difficulties. His son, who was forty-three years old at the time of the hearing, was divorced, had three minor children, and had difficulty maintaining a job. According to Mr. Poore, “the expenses were pretty much attached to that situation.” Mr. Poore acknowledged that Ms. Williams likewise has provided financial assistance to their son. As noted, Mr. Poore stopped providing financial assistance to his son and stopped paying Ms. Williams spousal support in November 2009 when he lost his job. Mr. Williams testified that he was attempting to avoid filing bankruptcy.
 

 According to Mr. Poore, Ms. Williams worked during the marriage from time to time as an optical sales person. He testified that she was not disabled at the time they entered into, the consent agreement.
 

 
 *957
 
 Ms. Williams, who was sixty-three years old at the time of the hearing, testified that she was not employed. She stated that she has not worked since she started taking medication for her mental condition, which is discussed below, and that she had not applied for Social Security benefits. She explained that the reason she had not applied for Social Security benefits was because she could receive higher benefits if she waited until she reached age sixty-eight or seventy to apply. | (iShe had, however, applied for Social Security disability benefits, but was denied because she did not have sufficient work credits.
 

 Ms. Williams acknowledged that Mr. Poore has paid her about $200,000.00 in spousal support during the last ten years and that during that period she has not sought employment. She likewise acknowledged that she did she seek employment when Mr. Poore stopped paying her spousal support. She explained that she is incapable of working due to her mental condition. She further explained that her treating psychiatrist, Dr. Charles Billings, diagnosed her as bipolar and manic depressive and that she is taking multiple medications for her mental condition. According to Ms. Williams, Dr. Billings told her it would be difficult for her to hold a full-time job because she was fragile.
 
 [2]
 

 During the time that Mr. Poore failed to pay her spousal support, Ms. Williams testified that she spent $18,500.00 of the $20,000.00 she had in a savings account. She identified the primary source of the funds in the savings account as coming from her father who passed away in June 2008.
 

 On her Statement of Income and Expenses, dated November 30, 2009, which she introduced at the hearing, Ms. Williams listed her monthly income as totaling $1,657.92 ($1,500.00 in spousal support and $157.92 in pension), and her monthly expenses as totaling $2,607.00. Her primary monthly expenses are health insurance ($744.00) and medication ($453.00). Ms. Williams owns her own house and thus has no mortgage expense. Ms. Williams listed her assets as totaling $244,900.00, which consisted of the following: her house ($125,000.00), stocks or 17bonds ($100,000.00), a vehicle ($13,-000.00), cash ($200.00), and saving and checking accounts ($6,700.00).
 

 Ms. Williams also listed two loans, one of which was from Steve Wendling for $3,000.00 and the other was from Gloria Wendling for $5,000.00. Ms. Williams identified Mr. Wendling as her fifty year old boyfriend. Ms. Williams testified that Mr. Wendling spends two or three nights per week at her house, but she acknowledged that he does not provide any financial assistance to her. Nor does she provide any financial assistance to him. She testified that they are completely separate.
 

 Ms. Williams testified that she is currently providing financial assistance to her son, Christopher Poore, and that her son is planning to move into her house. She acknowledged that Mr. Poore likewise has provided financial assistance to their son.
 

 On April 30, 2010, the trial court rendered judgment granting Mr. Poore’s rule to modify final spousal support and reduc
 
 *958
 
 ing his obligation to $700.00 per month retroactive to the date of filing, November 12, 2009. Based on Mr. Poore’s admission that he had not paid Ms. Williams any spousal support for the six month period from November 2009 through the date of the hearing, April 2010, the trial court granted Ms. William’s rule for contempt.
 
 [3]
 
 The trial court also granted Ms. Williams’ motion to make past due support executo-ry in the amount of $5,193.33. The trial court noted that “[t]his figure reflects Mr. Poore’s new spousal support obligation, as it was retroactive to November 12, 2009. The mo[n]th of November |swas pro-rated to reflect the prior and current support obligation.” Ms. Williams then filed this appeal from both the March 24, 2010, and April 30, 2010, judgments.
 

 DISCUSSION
 

 The principal issue on appeal is whether the trial court erred in modifying the final spousal support award. In addressing this issue, the following three-tiered standard of review applies:
 

 First, we must determine whether the trial judge correctly applied the proper legal standard or standards. We do not defer to the discretion or judgment of the trial judge on issues of law. Second, we must examine the trial judge’s findings of fact. We will not overturn the trial judge’s factual determinations unless, in light of the record taken as a whole, they are manifestly erroneous (or clearly wrong). Third, we must examine the propriety of the alimony award. If it is within legal limits and based on facts supported by the record, we will not alter the amount of the award in the absence of an abuse of the trial judge’s great discretion to set such awards.
 

 Baggett v. Baggett,
 
 96-453, p. 4 (La.App. 3 Cir. 4/23/97), 693 So.2d 264, 266-67 (quoting
 
 Davy v. Davy,
 
 469 So.2d 481, 482 (La.App. 3 Cir.1985)).
 

 Ms. Williams raises three assignments of error. First, she contends the trial court erred in granting of Mr. Poore’s rule to modify final spousal support because the consent judgment was a binding, bilateral contract. Second, she contends the trial court erred in granting Mr. Poore’s rule to modify the final spousal súpport because Mr. Poore did not prove a substantial change in circumstances. Third, she contends the trial court erred in finding her need did not exceed $700.00 per month and that she had the ability to work. We separately address each of her assignments of error.
 

 |
 
 ¡,.Modification of final spousal support award
 

 The right to modify the amount of spousal support awarded through a consent judgment depends upon the specific terms of the consent judgment.
 
 Aufrichtig v. Aufrichtig,
 
 34,909 (La.App. 2 Cir. 8/22/01), 796 So.2d 57;
 
 Twichell v. Twichell,
 
 00-1248, p. 4 (La.App. 5 Cir. 11/28/00), 772 So.2d 956, 959 (citing
 
 Bland v. Bland,
 
 97 0329 (La.App. 1 Cir. 12/29/97), 705 So.2d 1158). “The mere listing of events which will terminate spousal support does not evidence a clear intent that the amount of spousal support can never be changed.”
 
 Ray v. Ray,
 
 05-0873, p. 6 (La.App. 1 Cir. 3/23/07), 960 So.2d 174, 178 (citing
 
 Bland,
 
 supra);
 
 Stout v. Stout,
 
 97-1508 (La.App. 3 Cir. 10/7/98), 719 So.2d 727. Citing this line of jurisprudence, the trial court in its
 
 *959
 
 reasons for judgment stated that “an agreement that terminates contractual alimony upon the death or remarriage of the payee does not preclude modification of the amount unless there is a specific non-modification language such as ‘not subject to increase or decrease.’ ” Finding the consent judgment lacked specific non-modification language, the trial court held that the parties could introduce evidence on whether there had been a material change in circumstances under La. C.C. art. 114, which provides that “[a]n award of periodic support may be modified if the circumstances of either party materially change and shall be terminated if it has become unnecessary.”
 

 Ms. Williams contends that the trial court’s reliance on this line of jurisprudence was misplaced. She contends that the line of cases requiring non-modification language is “inapplicable to the case at hand because of the terms 110contained in the September 14, 1998 consent judgment which made her silence an ‘integral part’ of the consent judgment.” We disagree. The provision regarding the parties’ silence is a reciprocal one, requiring both parties to remain silent. Moreover, the provision regarding silence is separate from the provision regarding spousal support. Given that the spousal support provision does not contain non-modification language, the trial court correctly concluded that the amount of spousal support was subject to modification. The trial court thus did not err in allowing the parties to present evidence on the issue of a substantial change in circumstances under La. C.C. art. 114. Having determined that Mr. Poore could seek a modification of the support obligation, we now address whether a reduction was justified — whether a material change in circumstances was established.
 

 Material change in circumstances
 

 The party seeking to modify a spousal support award has the burden of proving “a material change in circumstances of one of the parties between the time of the previous award and the time of the rule for modification of the award.” La. R.S. 9:311(A); La. C.C. art. 114. The party must show either “a change in the obligee’s needs or the obligor’s ability to pay.”
 
 Willis v. Willis,
 
 355 So.2d 999, 1001 (La.App. 4th Cir.1978). A trial court’s determination of whether a material change in circumstances has been established will not be disturbed on appeal absent an abuse of discretion.
 
 Hebert v. Hebert,
 
 06-1315, p. 3 (La.App. 3 Cir. 2/7/07), 948 So.2d 1239, 1241-42 (citing
 
 Dauphine v. Dauphine,
 
 511 So.2d 53 (La.App. 3rd Cir. 1987)).
 

 11 t According to the official revision comments to Article 114, “[t]he court should make the determination whether periodic support will be modified or terminated based on the changed circumstances of either party.” In so doing, “[t]he court should consider the relevant factors listed in Article 112.” The Article 112 factors to be considered by courts in awarding or modifying final spousal support are as follows:
 

 1. The income and means of the parties, including the liquidity of such means.
 

 2. The financial obligations of the parties.
 

 3. The earning capacity of the parties.
 

 4. The effect of custody of children upon a party’s earning capacity.
 

 5. The time necessary for the claimant to acquire appropriate education, training, or employment.
 

 6. The health and age of the parties.
 

 7. The duration of the marriage.
 

 
 *960
 
 8. The tax consequences to either or both parties.
 

 In this case, the trial court was presented with evidence regarding Mr. Poore’s income and Ms. Williams’ needs and found that Mr. Poore met his burden of establishing a material change in circumstances. The trial court gave the following reasons for its finding:
 

 During Mr. Poore’s Rule to Modify, he testified that he lost his job with Carson Wagonlit Travel. Mr. Poore stated that he worked for Carlson Wagonlit for nineteen years and received a severance package in the area of $41,000.00. Mr. Poore recently obtained employment, earning $60,000.00 per year. Mr. Poore introduced an income and expense statement, demonstrating a monthly net income of $6,945.17. He reported that his monthly expenses total $7,788.95. A majority of Mr. Poore’s monthly expenses are related to outstanding credit card [ 12bills. He stated that he incurred these bills as a result of helping the parties’ adult son, Christopher Poore, who had and continues to have financial trouble.
 

 Ms. Williams testified that she has not worked in ten (10) years. She reported that she is on medication which prevents her from working. Ms. Williams stated that her sole source of support is the $1,500.00 spousal support payment. She attached a monthly income and expense statement dated November 30, 2009. At that time, she reported monthly expenses of $2,607.00. Ms. Williams reported her total assets to be $244,900.00. Ms. Williams indicated that she is also helping their son. She stated that Christopher plans on moving in with her in the near future. Ms. Williams acknowledged that Mr. Poore has helped their son in the past.
 

 On appeal, Ms. Williams contends that Mr. Poore failed to prove a material change in circumstances for two reasons. First, she contends that he failed to prove a decrease in his income by a legal certainty. Rather, she contends that when he filed the rule to modify the spousal support (November 2009) he was actually making more money than when he entered the consent judgment (August 1998). Although Mr. Poore was unemployed when he filed his rule to modify, he received a severance package equal to six months of his prior salary, which was $98,000.00 a year. Moreover, he recommenced employment in January 2010 earning $60,000.00 a year. As a result, she contends that when he filed his rule to modify his annual income actually was equal to at least $98,000.00, which is more than he was making when the consent judgment was entered.
 

 Second, Ms. Williams contends that the trial court erred in considering Mr. Poore’s financial support of Christopher Poore, the parties’ major son, as a living expense. In support, she cites the well-settled jurisprudence holding that the financial support of a major child is not considered a living expense of a party for purposes of determining spousal support.
 
 Green v. Green,
 
 432 So.2d 959 (La.App. |134th Cir.1983). Regardless, she emphasizes that Mr. Poore testified that he was no longer financially supporting Christopher Poore when he filed his rule to modify.
 

 Mr. Poore counters that the trial court correctly found a material change in circumstances based on the evidence regarding his loss of his job, his monthly income and expenses, and his financial troubles as a result of helping his major son. He further contends that the trial court also correctly considered that Ms. Williams had not worked in ten years and correctly concluded that she had an earning capacity
 
 *961
 
 because she was not disabled in such a way as to prevent her from working.
 

 In finding Mr. Poore met his burden of establishing a material change in circumstances, the trial court weighed the credibility of the witnesses — Mr. Poore and Ms. Williams — and properly considered all of the pertinent Article 112 factors. Insofar as Mr. Poore’s income, the record reflects his present income at Travelcorp is only $60,000.00 a year. Although he received a one-time severance from Carlson when he was terminated from his previous employment, the severance is not part of his current income. Moreover, he used a large portion of the severance to catch up on the arrearages that he owed Ms. Williams, which in September 2009 totaled $8,750.00. We further note that Mr. Poore testified that since 1998 his expenses have dramatically increased and that his current monthly expenses exceed his current monthly income.
 

 The relevance of Mr. Poore’s support of his major son was that it was identified as the primary cause of Mr. Poore’s large credit card balances. However, |uas Ms. Williams acknowledges, when Mr. Poore filed his motion to modify the spousal support, he was no longer financially supporting their major son. At the time of the hearing, Ms. Williams testified that she was providing financial support to them son. Given both parties acknowledge that they have each financially supported their major son, this factor, even if considered, is neutral.
 

 One of the Article 112 factors the trial court could have considered was the age of the parties. Given her age — sixty-three at the time of the hearing — Ms. Williams acknowledged that she was eligible to apply for Social Security benefits. However, she testified that she elected to wait until age sixty-eight or seventy in order to collect higher Social Security benefits. On the other hand, one of sources of Mr. Poore’s current income is his Social Security benefits.
 

 Another Article 112 factor the trial court could have considered is the lengthy duration of the marriage — thirty-three years. Although this factor initially may have supported a spousal support award to Ms. Williams to help her adjust, we find, as Mr. Poore asserted in his motion, that “[t]he period of time for the recipient [Ms. Williams] to adjust to the divorce is long past due.” In this regard, we note that both parties acknowledged that Mr. Poore has paid Ms. Williams approximately $200,000.00 in spousal support over the last decade.
 

 In sum, the record reflects that the trial court, in accord with La. C.C. art. 112, considered all the relevant factors testified to in court by the parties and correctly concluded that Mr. Poore met his burden of establishing a material change in circumstances. However, “[a] finding of change in circumstances does |1snot automatically result in a modification or termination of support.”
 
 Mizell v. Mizell,
 
 40,-601, p. 3 (La.App. 2 Cir. 1/25/06), 920 So.2d 927, 929. Rather, the effect of a finding of a change in circumstances is to “shift the burden to the party opposing the modification or termination of alimony to prove need and the relevant [Article] 112 factors.”
 
 Id.
 
 The next issue we must address is whether, as Ms. Williams contends, the trial court erred in determining her need was only $700.00 per month and that she had the ability to work.
 

 Need and ability to work
 

 Ms. Williams contends that she established her need through her testimony that she was unemployed, that her principal source of income was the spousal support of $1,500.00 a month, and that her
 
 *962
 
 expenses totaled $2,607.00 a month. She contends that the trial court’s findings that her need was only $700.00 a month and that she was able to work were erroneous in two respects.
 

 First, she contends that the trial court erred in relying on the fact she had total assets of $244,900.00. In support, she cites the principle that it is unjust to punish a former spouse for her prudent handling of. her financial affairs.
 
 Stolier v. Stolier,
 
 357 So.2d 1334 (La.App. 4th Cir.1978). Contrary to Ms. Williams’ contention, the trial court’s consideration of the fact that she had significant assets was not improper. A parties’ means, including the liquidity of those means, is an Article 112 factor.
 
 See Voyles v. Voyles,
 
 04-1667, p. 5 (La.App. 3 Cir. 5/4/05), 901 So.2d 1204, 1206 (noting that “[a]ll relevant factors listed in La.Civ.Code art. 112 are to be considered by the trial court in determining the entitlement, amount and 11fiduration of the award”);
 
 see also Davis v. Davis,
 
 445 So.2d 121, 122 (La.App.2d Cir.1984)(noting that
 
 Stolier, supra,
 
 was decided before the Legislature amended the pertinent divorce article (then La. C.C. art. 160) to include the liquidity of assets and other factors).
 

 Second, Ms. Williams contends that the trial court erred in excluding from evidence her exhibit — an uncertified letter from her treating physician, Dr. Billings— regarding her mental condition and inability to work. The trial court correctly ruled that the uncertified correspondence from Ms. Williams’ treating physician could not be introduced into evidence. In so ruling, the trial court expressly indicated that if the correspondence was certified it would have been admissible. Given the lack of proper evidence of her inability to work, the trial court found that “Ms. Williams is not disabled in such a manner that would prevent her from working.”
 

 The trial court’s ruling excluding the uncertified letter and imputing income to Ms. Williams for purposes of modifying the spousal support award is supported by the jurisprudence.
 
 Williams v. Williams,
 
 97-2245, p. 7 (La.App. 4 Cir. 4/11/01), 803 So.2d 50, 54. In
 
 Williams, supra,
 
 this court outlined the following pertinent principles:
 

 • “A spouse claiming the inability to work for the purpose of computing alimony bears the burden of proving that disability by a preponderance of the evidence;”
 

 • The spouse’s “own self-serving testimony regarding his or her inability to work is insufficient proof of the inability;”
 

 | it* The spouse claiming such an inability must present corroborating evidence, such as a certified doctor’s report or a doctor’s expert testimony;
 

 • “Except perhaps in a case where the spouse’s obvious mental or physical disability renders that spouse impaired, a trial court abuses its discretion in finding that a spouse is unable to work on the basis of that spouse’s own self-serving testimony alone;”
 

 • When a non-working spouse fails to establish an inability to work, the trial court is required to impute some income to that spouse; and
 

 • “In determining the amount of income to impute to such a non-working spouse claiming alimony, the trial court should consider that spouse’s employment history, physical and mental health, age, and education. La. C.C. art. 112.”
 

 In this case, Ms. Williams’ testimony that she was diagnosed as bipolar and manic depressive was insufficient to establish a disability that rendered her unable to work. Nor was this an obvious mental
 
 *963
 
 or physical disability. Given Ms. Williams’ failure to introduce proper evidence of her inability to work, the trial court was required to impute income to her by considering the relevant Article 112 factors. Considering all the relevant factors, including the assets of the parties and Ms. Williams’ earning capacity, the record supports the trial court’s reduction of Ms. Williams’ spousal support to $700.00 per month.
 

 DECREE
 

 For the forgoing reasons, the judgment of the trial court is affirmed.
 

 AFFIRMED.
 

 [1]
 

 . One of their major children is Christopher Poore.
 

 [2]
 

 . The trial court denied Ms. Williams’ request to introduce a copy of a letter from Dr. Billings because the letter was not certified. A copy of the letter was included in the record as a proffer. Ms. Williams also testified that she was diagnosed by another physician as having emphysema, and she proffered a copy of a letter from her other physician stating she had been diagnosed with COPD (Chronic Obstructive Pulmonary Disease) in 2004 and was stable with medication. She further testified that she had cancer on her leg, which had been removed.
 

 [3]
 

 . At the time of the hearing, Mr. Poore only owed spousal support for the six month period of November 2009 through April 2010. Although in September 2009 Mr. Poore was found in contempt for failing to pay the spousal support and the arrearages at that time totaling $8,750.00 were made executory, Mr. Poore testified at the hearing that when he received his severance package he paid in full the previous arrearages.