| | | |
|---|---|---|
| **JACK H. SHANNON** | * | **NO. 2024-CA-0140** |
| **VERSUS** | * | |
| | | **COURT OF APPEAL** |
| **JULIA WESTRICH SHANNON** | * | **FOURTH CIRCUIT** |
| | * | |
| | | **STATE OF LOUISIANA** |

* * * * * * *

<u>**CONSOLIDATED WITH:**</u>          <u>**CONSOLIDATED WITH:**</u>

**JACK H. SHANNON**          **NO. 2024-CA-0219**

**VERSUS**

**JULIA WESTRICH SHANNON**

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2005-13100, DIVISION "H"
Honorable Jane E. Booth, Judge Pro Tempore
* * * * * *
**Judge Paula A. Brown**
* * * * * *

(Court composed of Judge Sandra Cabrina Jenkins, Judge Paula A. Brown, Judge Karen K. Herman)

Mitchell J. Hoffman
HOFFMAN NGUYEN & KUEHL
643 Magazine Street, Suite 401
New Orleans, LA 70130

Elizabeth K. Fox
Fox Law Firm, LLC
23422 Cypress Cove
Springfield, LA 70462

          COUNSEL FOR PLAINTIFF/APPELLEE

**CORRECTED COPY**

Christy M. Howley
M. Elizabeth Bowman
Jordan T. Giles
BOWMAN & HOWLEY
629 Lafayette Street
Gretna, LA 70053

     COUNSEL FOR DEFENDANT/APPELLANT

**AFFIRMED**
**OCTOBER 25, 2024**

This appeal involves termination of spousal support. Appellant, Julia Westrich Shannon ("Ms. Shannon"), seeks to appeal the district court's March 31, 2023 judgment, which denied Ms. Shannon's peremptory exceptions, terminated spousal support between the parties, and ordered Ms. Shannon to reimburse Appellee, Jack Shannon ("Mr. Shannon"), for spousal support payments retroactive to the date of judicial demand. For the reasons that follow, we affirm the district court's judgment.

## FACTS AND PROCEDURAL HISTORY

On September 10, 1993, Ms. Shannon and Mr. Shannon married in Denver, Colorado. On December 9, 2005, Mr. Shannon filed for divorce,[1] which was subsequently granted on September 8, 2006. The parties executed two consent

---

[1] Mr. Shannon sought a divorce pursuant to La. C.C. art. 102, which provides:

> Except in the case of a covenant marriage, a divorce shall be granted upon motion of a spouse when either spouse has filed a petition for divorce and upon proof that the requisite period of time, in accordance with Article 103.1, has elapsed from the service of the petition, or from the execution of written waiver of the service, and that the spouses have lived separate and apart continuously for at least the requisite period of time, in accordance with Article 103.1, prior to the filing of the rule to show cause.
>
> The motion shall be a rule to show cause filed after all such delays have elapsed.

1

judgments on February 11, 2013—one regarding partition of community property and one regarding spousal support. The *Consent Judgment Regarding Spousal Support* (the "consent judgment") provided the following pertinent provisions:

> IT IS ORDERED, ADJUDGED AND DECREED that, thereafter, beginning March 1, 2013, Jack Shannon will pay rehabilitative spousal support in the amount of $4,400 per month to Julia Westrich Shannon for a period of ten (10) years, ending on February 28, 2023.

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Jack Shannon will pay $5,400 in rehabilitative spousal support to Julia Westrich Shannon beginning March 1, 2023 until she reaches the age of 80 years old on August 28, 2034.

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the above-mentioned support payments are not subject to increase, decrease or termination for any reason whatsoever, other than the death of Jack Shannon or Julia Westrich Shannon, or as set out below.

> \* \* \*

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the above-mentioned spousal support and other payments shall not terminate upon the occurrence of Julia Westrich Shannon co-habiting with another man or her remarriage. These payments are only subject to termination upon the death of either party, or if Julia Westrich Shannon should inherit, be gifted, or in any other manner receive a sum of money equal to or in excess of $1,000,000 from any third party other than Jack Shannon within a two year period.

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that other than the rehabilitative spousal support payments set out above, there will be no further support obligation owed to Julia Westrich Shannon by Jack Shannon.

Over seven years later, on July 17, 2020, Mr. Shannon filed a motion to modify and/or terminate spousal support ("original motion to modify") based on an allegation of a material change in his circumstances since rendition of the consent judgment. Specifically, Mr. Shannon alleged that he had been diagnosed with Parkinson's disease, which both increased his medical and household expenses and

2

forced him to retire. Additionally, Mr. Shannon alleged that Ms. Shannon had commenced living with another man in the manner of married persons and was benefitting financially from that relationship. In response, on September 4, 2020, Ms. Shannon filed peremptory exceptions of no cause of action and res judicata, which were both later denied on October 7, 2020. On December 3, 2020, Ms. Shannon filed a motion for summary judgment, which was met with Mr. Shannon's cross motion for summary judgment twenty days later. The motion for summary judgment and cross motion for summary judgment came for hearing on April 28, 2021. Following, the district court issued a judgment on June 8, 2021, granting Ms. Shannon's motion and declaring the consent judgment to be valid and enforceable according to its terms, with the clarification that "the provision of the [c]onsent [j]udgment relating to the receipt by Ms. Shannon of [$1,000,000.00] over a period of two years was not addressed by the Court."

On January 12, 2022, Mr. Shannon filed an amended motion to modify and/or terminate spousal support ("second motion to modify"),[2] wherein he alleged that "spousal support should be terminated retroactive to a date in 2013, which ha[d] yet to be determined because [Ms. Shannon] received in excess of [$1,000,000.00] from any third party within a two year period." Additionally, Mr. Shannon averred that Ms. Shannon had "intentionally withheld, failed to reveal, or failed to disclose" the material facts related to her alleged receipt of these sums of

---

[2] Although Mr. Shannon styled his motion as an "amended" motion to modify, the original motion to modify had been resolved via the granting of Ms. Shannon's motion for summary judgment. The original motion to modify sought modification based on the default rule found in the La. C.C. art. 114—a material change in circumstances. However, by granting Ms. Shannon's motion—which specifically prayed for the dismissal of Mr. Shannon's motion to modify—and finding that the consent judgment's terms governed, the district court effectively resolved all issues raised in the original motion to modify. As such, we will refer to Mr. Shannon's amended motion to modify as his second motion to modify.

money.[3]  One day later, Mr. Shannon filed a motion to suspend spousal support with incorporated memorandum, wherein he alleged that Ms. Shannon had received over $1,000,000.00 in satisfaction of the consent judgment condition as follows: "on April 25, 2013, [Ms. Shannon] received $1,650,000.00. Also in 2013, she received $350,000.00, and on November 25, 2014, [Ms. Shannon] received an inheritance of $212,183.57 along with other amounts."  Through discovery, it was learned that the $1,650,000.00 was transferred to Mr. Shannon from an individual named Chad Emmett ("Mr. Emmett").[4]

Mr. Shannon's second motion to modify came for hearing over three non-consecutive days—June 2, 2022, October 25, 2022, and November 29, 2022. After the close of the first day to testimony, on June 2, 2022 at 3:20 p.m., Ms. Shannon filed six peremptory exceptions: two for prescription, three for no cause of action and/or no right of action, and one for res judicata.[5]  In response to these exceptions, Mr. Shannon filed an opposition on October 17, 2022, wherein he alleged that the exceptions were untimely.  On the second day of trial, the district court noted that it would delay ruling on Ms. Shannon's exceptions until the hearing on Mr. Shannon's second motion to modify was completed.   After the conclusion of the hearing and oral argument on November 29, 2022, the district court took the matter under advisement. On December 5, 2022, the parties entered into a joint motion for judgment on the pleadings, memoranda, and evidence adduced at trial related to the six exceptions filed by Ms. Shannon on June 6, 2022.  The district court

---

[3] We note, at this point, that the allegations as to the sources of money were very broad and attributed to inheritance and gifts received.

[4] Ms. Shannon and Mr. Emmett have cohabited together since 2006.

[5] See more detailed discussion, *infra*.

rendered its ruling and reasons for judgment in writing on March 31, 2023, dismissing all of Ms. Shannon's peremptory exceptions as untimely and granting Mr. Shannon's request to terminate spousal support with such termination retroactive to January 12, 2022—the date of judicial demand—with Ms. Shannon owing $20,296.80 in reimbursement. This appeal followed.

Mr. Shannon responded with an answer, seeking a retroactive termination date of April 25, 2013, and reimbursement in the amount of $511,323.00.

## STANDARD OF REVIEW

"When reviewing questions of fact as determined by the factfinder, be it a jury or a judge, appellate courts utilize the manifest error or clearly wrong standard of review." *Veazey v. Johnson*, 21-0639, p. 8 (La. App. 4 Cir. 2/15/23), 358 So.3d 186, 191 (quoting *Harold A. Asher, CPA, LLC v. Haik*, 12-0771, p. 4 (La. App. 4 Cir. 4/10/13), 116 So.3d 720, 723). Additionally, "[t]he manifest error standard of review also applies to mixed questions of law and fact." *Id.* (citing *Davis v. Nola Home Constr., L.L.C.*, 16-1274, p. 6 (La. App. 4 Cir. 6/14/17), 222 So.3d 822, 840). When an appellate court reviews questions of law, the *de novo* standard of review applies. *Id.* (citing *Bradix v. Advance Stores Co., Inc.*, 17-0166, p. 3 (La. App. 4 Cir. 8/16/17), 226 So.3d 523, 527). Further, "[i]n the interpretation of contracts, the trial court's interpretation of the contract is a finding of fact subject to the manifest error rule." *French Quarter Realty v. Gambel*, 05-0933, p. 3 (La. App. 4 Cir. 12/28/05), 921 So.2d 1025, 1027-28 (quoting *Genghis Kahn, Inc. v. Formosa Hotel, Inc.*, 03-1218, p. 4 (La. App. 4 Cir. 6/2/04), 876 So.2d 923, 925).

## DISCUSSION

Ms. Shannon essentially raises three assignments of error: (1) the district erred in summarily dismissing Ms. Shannon's peremptory exceptions; (2) the

district court erred in finding that the $1,650,000.00 payment to Ms. Shannon was a transfer from a third party that satisfied the termination clause in the consent judgment; and (3) the district court erred in terminating spousal support without first making a finding as to the current necessitous circumstances of Ms. Shannon. In addition, and as a preemptive strike, Ms. Shannon contends that the district court did not err in terminating spousal support to the date of judicial demand. We will address each of these errors in turn.

*Exceptions*

Ms. Shannon filed six peremptory exceptions[6] to Mr. Shannon's second motion to modify. First, Ms. Shannon argued that Mr. Shannon's claim for termination of spousal support was subject to res judicata[7] due to her successful motion for summary judgment. Second, Ms. Shannon contended that Mr. Shannon

---

[6] Louisiana Code of Civil Procedure Article 927 provides:

    A. The objections that may be raised through the peremptory exception include but are not limited to the following:
    (1) Prescription.
    (2) Peremption.
    (3) Res judicata.
    (4) Nonjoinder of a party under Articles 641 and 642.
    (5) No cause of action.
    (6) No right of action, or no interest in the plaintiff to institute the suit.
    (7) Discharge in bankruptcy.
    (8) The court's lack of jurisdiction over the subject matter of the action.

[7] Louisiana Revised Statutes 13:4231, entitled "Res judicata," provides:

Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
(1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.
(2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.
(3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.

did not state a cause of action for fraud or misrepresentation because Mr. Shannon voluntarily signed the consent judgment.[8]  Third, Ms. Shannon, relying on La. C.C.P. art. 2004, urged that even if there was a viable claim for fraud, that claim had prescribed as claims for fraud or ill practices must be brought within one year of discovery.[9]  Fourth, Ms. Shannon argued that, in accordance with La. C.C.P. art. 1151, by failing to obtain leave of court or consent of Ms. Shannon prior to filing the second motion to modify, Mr. Shannon's motion should be dismissed for no right of action and/or no cause of action.[10]  Fifth, Ms. Shannon asserted that Mr. Shannon failed to state a cause of action entitling him to relief sought because he sought retroactivity to a date prior to judicial demand in contravention to La. R.S. 9:321.[11]  Sixth, and lastly, Ms. Shannon argued that pursuant to La. C.C. art. 3490, Mr. Shannon's request for relief seeking reimbursement prescribed.[12]  After

---

[8] Louisiana Code of Civil Procedure Article 856 provides, in pertinent part, that "[i]n pleading fraud . . . the circumstances constituting fraud . . . shall be alleged with particularity."

[9] Louisiana Code of Civil Procedure Article 2004 provides in pertinent part:

> (A) A final judgment obtained by fraud or ill practices may be annulled.
> (B) An action to annul a judgment on these grounds must be brought within one year of the discovery by the plaintiff in the nullity action of the fraud or ill practices.

[10] Louisiana Code of Civil Procedure Article 1151 provides:

> A plaintiff may amend his petition without leave of court at any time before the answer thereto is served.  He may be ordered to amend his petition under Articles 932 through 934.  A defendant may amend his answer once without leave of court at any time within ten days after it has been served.  Otherwise, the petition and answer may be amended only by leave of court or by written consent of the adverse party.

[11] Louisiana Revised Statutes 9:321 provides in pertinent part:

> C.  Except for good cause shown, a judgment modifying or revoking a final spousal support judgment shall be retroactive to the date of judicial demand.

[12] Louisiana Civil Code Article 3490 provides:

> One who has possessed a movable as owner, in good faith, under an act sufficient to transfer ownership, and without interruption for three years, acquires ownership by prescription.

considering Ms. Shannon's exceptions on the pleadings, the district court dismissed the exceptions as untimely. On appeal, Ms. Shannon contends that the district court erred in summarily dismissing her exceptions because, pursuant to La. C.C.P. art. 928, peremptory exceptions can be brought at any stage of the trial proceeding.

In opposition, Mr. Shannon argues that his second motion to modify is a summary proceeding governed by La. C.C.P. art. 2592. As such, the applicable article for the time delay in which to file exceptions in a summary proceeding is La. C.C.P. art. 2593, which mandates that the exceptions be filed before the trial begins. Mr. Shannon posits that, because the contradictory hearing on his second motion to modify began at 9:30 a.m. on June 2, 2022, Ms. Shannon was untimely in filing her exceptions at 3:20 p.m.—more than five hours after the trial commenced. We agree.

Louisiana Code of Civil Procedure Article 2592 provides, in part, that "[s]ummary proceedings may be used for trial or disposition" of matters involving:

> (8) The original granting of, subsequent change in, or termination of custody, visitation, and support for a child; support for a spouse; injunctive relief; support between ascendants and descendants; use and occupancy of the family home or use of community movables or immovables; or use of personal property.

The succeeding article explains that "[e]xceptions to a contradictory motion, rule to show cause, opposition, or petition in a summary proceeding shall be filed prior to the time assigned for, and shall be disposed of at, the trial." La. C.C.P. art. 2593. In contrast, La. C.C.P. art. 928 states, in pertinent part, that "[t]he peremptory exception may be pleaded at any stage of the proceeding in the trial prior to a submission of the case for a decision . . . ." We note that "[a]s a general rule of statutory construction, a specific statute controls over a broader, more

8

general statute." *Treas v. Koerner*, 20-0050, p. 8 (La. App. 4 Cir. 7/15/20), 364 So.3d 285, 290 (quoting *Channelside Serv., LLC v. Chrysochoos Group, Inc.*, 15-0064, p. 17 (La. App. 4 Cir. 5/13/16), 194 So.3d 751, 761). Thus, "where two statutes deal with the same subject matter, in the event of a conflict, the specific statute prevails over the statute more general in nature." *Id.* (citing *Channelside*, 15-0064, pp. 17-18, 194 So.3d at 761).

In *Gilkes v. Bower*, the underlying action was a request for a preliminary injunction, which is a summary proceeding as defined by La. C.C.P. art. 2592(8). 99-0574, p. 1 (La. App. 4 Cir. 4/1/99), 734 So.2d 98, 99. On the morning of the hearing for the injunction, the defendant filed a peremptory exception of lack of subject matter jurisdiction and a declinatory exception of lack of personal jurisdiction. In those exceptions, the defendant requested that the district court delay the hearing on the preliminary injunction in order to first rule on the exceptions. However, the district court refused and proceeded with the preliminary injunction hearing. After the district court granted the preliminary injunction, the defendant appealed the matter, specifically seeking review of the failure to hear his exceptions. On appeal, while the time of the hearing is not explicitly provided, this Court noted that defendant's exceptions were filed "at 9:37 a.m. on 22 January 1999, minutes before the hearing on the preliminary injunction began." *Id.* at p. 4, 734 So.2d at 101. Thus, because "he filed these pleadings before the time of the scheduled trial […] the [district] court should have considered them on the trial on the preliminary injunction." *Id.* at p. 5, 734 So.2d at 101 (citing *Sizeler v. Sizeler*, 375 So.2d at 123-24 (La. App. 4 Cir. 1979)).

In *Sizeler*, the underlying action centered on alimony payments between husband and wife, which is a summary proceeding as defined by La. C.C.P. art.

9

2592(8). 375 So.2d 122, 123 (La. App. 4 Cir. 1979). On the day of the hearing, the husband filed an exception to the wife's use of summary proceedings in the matter. The hearing was set to begin at 10:00 a.m., and the husband filed his exception at 11:20 a.m. However, the hearing did not begin as scheduled, and did not actually commence until an undisclosed time in the afternoon after the exception had been filed. Nonetheless, the district court denied the exception as untimely based on the original starting time for the hearing. On appeal, this Court disagreed with the district court and explained:

> The obvious reasoning behind the adoption of [La. C.C.P. art.] 2593 is to afford an opportunity for the court to consider, in limine, the question of whether or not the matter before the court can properly be heard in a summary proceeding. Because an exception filed prior to the commencement of the actual hearing (as distinguished from the time the matter is set or scheduled for hearing) affords the in limine opportunity to the trial judge, we conclude that the exception filed in this case was timely.

*Id.* at 123-24.

In the case *sub judice*, the underlying issue in the second motion to modify is spousal support, making this motion triable by summary proceeding in accordance with La. C.C.P. art. 2592(8). Ms. Shannon's exceptions were filed in response to this motion. Because La. C.C.P. arts. 2592 and 2593 are more specific than the general rules provided under La. C.C.P. art. 928, we find that the timing requirements in the more specific articles prevail. Thus—in keeping with La. C.C.P. art. 2593—in order for the exceptions to be timely, they needed to be filed before 9:30 a.m. on June 2, 2022, the time and date of which the hearing on Mr. Shannon's second motion to modify commenced. As Ms. Shannon did not file until 3:20 p.m. later that day, the exceptions were untimely. This assignment of error is not persuasive.

10

### *Termination of Spousal Support*

This assignment of error centers on whether or not the $1,650,000.00 transferred from Mr. Emmett to Ms. Shannon satisfied a condition in the consent judgment, such that Mr. Shannon's obligation of spousal support terminated. Three witnesses testified at the hearing: Ms. Shannon; Mr. Emmett; and Jeffrey Meyers ("Mr. Meyers"), an expert in financial forensics, forensic accounting, and a Certified Fraud Examiner. The relevant testimony centered on the sale of an immovable property in Wainscott, New York (the "Wainscott property"). The Wainscott property was owned by Mr. Emmett, but he and Ms. Shannon alleged that she had purchased a one-half interest in 2011, such that the subsequent sale of the property in 2013 resulted in her receiving a return on her investment in the amount of $1,650,000.00. Mr. Shannon argued that Ms. Shannon's receipt of the $1,650,000.00 was nothing more than a gift exchanged between Mr. Emmett and Ms. Shannon, such that it violated the terms of the consent judgment, thus terminating his spousal support obligation. A more detailed account of each witness's testimony follows.

*Ms. Shannon*

Ms. Shannon was the first witness called to testify at the hearing. She relayed that since at least 2005, Mr. Shannon had paid her between $4,000.00 and $5,000.00 per month for spousal support. Ms. Shannon then testified to having received several different sums of money from different sources. In 2013, she signed a promissory note and mortgage in favor of a "Marie Miggy Monroe" for $350,000.00. Mr. Emmett then paid this $350,000.00 back to Ms. Monroe in full later in 2013. Ms. Shannon acknowledged that she received $10,688.00 in 2014 as an advance on inheritance from her mother and an additional $212,183.57 from her

mother's succession later that same year. Ms. Shannon further acknowledged that on April 25, 2013, the sum of $1,650,000.00 had been transferred into one of her accounts.[13] When asked if the funds came from Mr. Emmett, Ms. Shannon responded that "[t]his money came from the sale of a property in Wainscott, New York." According to Ms. Shannon, in 2011, she transferred $1,000,000.00 to Mr. Emmett in exchange for a one-half interest in the Wainscott property, where she and Mr. Emmett resided. After being shown a copy of her Fidelity statement evidencing the $1,650,000.00 transfer, Ms. Shannon insisted that her own handwriting appeared on the document, which read "[p]urchase of one half interest in 128 [sic] Sayres Path Wainscott, New York." However, she admitted that her name was not on the title of this property, nor did she pay property taxes on this property. When probed whether there was any type of agreement between Ms. Shannon and Mr. Emmett memorializing the alleged sale, the following exchange occurred:

> A. We had a verbal agreement.
> Q. Okay. Describe the verbal agreement that you and Mr. Emmett had in 2011 for the Court please.
> A. It was really simple. We were, originally I was going to own the whole house. I thought that was a little bit much, but I was advised that I would own half of an interest in the Wainscott property.
> Q. Okay. And you ended up with half interest?
> A. Yes.
> Q. Was any agreement reached with respect to what would happen if the property were sold?
> A. The way we'd split the proceeds of the sale 50/50.
> Q. You would split proceeds of the sale 50/50?
> A. Yes.

---

[13] Although several different amounts of money were discussed at the hearing, Ms. Shannon's assignment of errors in the instant appeal only calls into question the $1,650,000.00. As such, we pretermit discussion of any other amounts.

Ms. Shannon's counsel then introduced an unsigned written residential contract of sale. The contract was drafted to reflect the sale of the entire Wainscott property, and while not executed by Ms. Shannon and Mr. Emmett, Ms. Shannon said that she and Mr. Emmett had discussed the contract with an attorney prior to agreeing for Ms. Shannon to purchase only a one-half interest in the property. Ms. Shannon testified that the Wainscott property was sold in 2013 for $3,475,000.00 and, after closing costs, she received one-half of the sales price in the amount of $1,650,000.00—which she later admitted that she did not report as a gain on her 2013 taxes.

*Mr. Emmett*

When the hearing resumed on October 25, 2022, Mr. Emmett was called to the stand. With regard to the Wainscott property, Mr. Emmett testified the following:

> Q. Okay. Now, it's been alleged that in 2011 Julie purchased a one-half interest in the Wainscott home from you. You're familiar with that allegation?
> A. I am.
> Q. But she didn't do that, did she?
> A. Could you repeat the question?
> Q. She didn't purchase a one-half interest from you in the Wainscott property in 2011, did she?
> A. Of course she did.

According to Mr. Emmett, it was his intention for Ms. Shannon have a one-half interest in Wainscott to either keep or sell. Once the property sold, he and Ms. Shannon each received $1,650,000.00. However, Mr. Emmett admitted that he did not possess any documents confirming that Ms. Shannon had purchased the property. Further, when looking at Mr. Emmett's 2011 tax return, there was no reference to the sale of the one-half interest to Ms. Shannon, and his 2013 tax return reported one hundred percent of the sale of the Wainscott property.

13

Additionally, Mr. Emmett testified that he transferred one hundred percent of the ownership to the buyer as the house was in his name alone, and he did not recall if a conversation about Ms. Shannon owning a one-half interest in the property ever arose between him and the buyer.

*Mr. Meyers*

Mr. Meyers, a Certified Fraud Examiner, was called to give expert testimony regarding the sale of the Wainscott property. Mr. Meyers disputed Mr. Emmett's testimony that Ms. Shannon paid him in exchange for a one-half interest in the Wainscott property. To form his opinion, Mr. Meyers reviewed pages of documents, including the individual tax returns and bank statements from Ms. Shannon and Mr. Emmett. According to Mr. Meyers, based on the information presented to him for review and the lack of any transactional documents identifying Ms. Shannon as an owner of the Wainscott property, there was nothing to suggest that the $1,650,000.00 was Ms. Shannon's share of proceeds from the sale of the Wainscott property. Instead, he concluded that the evidence presented contradicted that suggestion. Mr. Meyers opined that the simplest explanation was that "the transfer of the [$1,650,000.00] from Mr. Emmett to [Ms. Shannon] would have been a payment from a third point. It would have been a gift." Mr. Meyers further opined that the evidence suggested that there were misrepresentations made by Ms. Shannon with regard to the $1,650,000.00 transfer.

After taking the matter under advisement, the district court, relying on the testimony of the witnesses, bank statements, tax returns, and an unexecuted written residential contract of sale, found that the monies received by Ms. Shannon triggered the termination clause in the consent judgment. Specifically, the district court determined that:

> The Court is not persuaded and the evidence does not support her assertion that the monies received from Mr. Emmett upon the sale of the Wainscot[t] property was a return of funds she invested in the property along with the realization of a gain on that investment. Collateral documents related to the ownership of the property belie her assertions as to her interest in the property.

Going even further, the district court reasoned that even in considering the contradicting testimony and introduced exhibits, because the consent judgment bound Mr. Shannon and Ms. Shannon, the district court was not required "to inquire into the reason or intention behind the transfer of the funds."[14]  Because Ms. Shannon received monies in excess of $1,000,000.00 within a two-year period, which the district court concluded she did, the spousal support obligations created by the consent judgment terminated.

It is well-settled law that "[w]hen findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said." *Braud v. Bernstein*, 23-0332, p. 4 (La. App. 4 Cir. 12/20/23), 381 So.3d 58, 62 (quoting *Rosell v. ESCO*, 549 So.2d 840, 844 (La. 1989)).  It is equally well-settled law that when applying the manifest error standard of review to the trial court's interpretation of the contract, an appellate court "may not simply substitute its own view of the evidence for the trial court's view, nor may it disturb the trial court's finding of fact so long as it is reasonable." *Bartlett Constr. Co., Inc. v. St. Bernard Parish*

---

[14] We note that "a trial court's reasons for judgment are not part of the judgment and that appellate courts review judgments, not reasons for judgment. But, appellate courts may consider a trial court's reasons for judgment to obtain insight into the trial court's judgment." *Heard, McElroy & Vestal, L.L.C. v. Schmidt*, 22-0221, p. 16 (La. App. 4 Cir. 9/21/22), 349 So.3d 663, 673 (citing *Bruno v. CDC Auto Transp., Inc.*, 2019-1065, p. 9 (La. App. 4 Cir. 6/3/20), 302 So.3d 8, n. 11) (internal citations omitted).

*Council*, 99-1186, pp. 4-5 (La. App. 4 Cir. 5/31/00), 763 So.2d 94, 97 (citing *Syrie v. Schilhab*, 96–1027, p. 4 (La.5/20/97), 693 So.2d 1173, 1176).

Upon review of the record, we do not find that the district court erred in finding that the testimony of Mr. Meyers, along with any exhibits relied upon, to be more credible and persuasive than that of Ms. Shannon and Mr. Emmett. Ms. Shannon and Mr. Emmett testified that they had participated in a sale in 2011, whereby Ms. Shannon purchased a one-half interest in the Wainscott property for $1,000,000.00 from Mr. Emmett. After the Wainscott property sold in 2013, they each testified, the $1,650,000.00 transferred to Ms. Shannon was merely a return on her 2011 investment. On the other hand, Mr. Meyers testified that based on the financial documents he had reviewed and the lack of any transactional documents identifying Ms. Shannon as an owner of the Wainscott property, the $1,650,000.00 was nothing more than a gift. In hearing the above evidence, and in considering the language of the consent judgment itself, we find that the district court reasonably interpreted the consent judgment such that the $1,650,000.00 payment constituted monies received by Ms. Shannon, which acted to render Mr. Shannon's obligation to pay spousal support subject to termination.

This assignment of error is unpersuasive.

### *Hearing on Necessitous Circumstances*

This assignment of error focuses on another crossroads between default Civil Code articles and the presence of a consent judgment. Ms. Shannon asserts that, based on the mandate of La. C.C.P. art. 112, she was entitled to a hearing with evidence on her current necessitous circumstances prior to termination of spousal

support.[15]  Additionally, Ms. Shannon argues that, in order for Mr. Shannon to prevail on termination of spousal support, he must prove that, under a totality of the circumstances, Ms. Shannon is no longer in need.  However, Ms. Shannon fails to consider that the instant matter involves a consent judgment, which dictates the terms of the agreement between the parties.

"A consent judgment is a bilateral contract which is voluntarily signed by the parties and accepted by the court."  *Gebhard v. Gebhard*, 10-1412, p. 6 (La. App. 4 Cir. 2/16/11), 60 So.3d 717, 721 (quoting *Durfee v. Durfee*, 44,281, p. 4 (La. App. 2 Cir. 5/13/09), 12 So.3d 984, 987-88).  "It has binding force from the voluntary acquiescence of the parties."  *Id.* (citing *Durfee*, 44,281, p. 4, 12 So.3d at 988).  When parties enter into a consent judgment, the terms of the contract are paramount such that "[t]he right to modify the amount of spousal support awarded through a consent judgment depends upon the specific terms of the consent judgment."  *Williams v. Poore*, 10-1087, p. 9 (La. App. 4 Cir. 1/12/11), 55 So.3d 953, 958 (citing *Aufrichtig v. Aufrichtig*, 34,909, p. 6 (La. App. 2 Cir. 8/22/01),

---

[15] Louisiana Civil Code Article 112 provides, in pertinent part:

> A. When a spouse has not been at fault prior to the filing of a petition for divorce and is in need of support, based on the needs of that party and the ability of the other party to pay, that spouse may be awarded final periodic support in accordance with Paragraph B of this Article.
> B. The court shall consider all relevant factors in determining the amount and duration of final support, including:
> (1) The income and means of the parties, including the liquidity of such means.
> (2) The financial obligations of the parties, including any interim allowance or final child support obligation.
> (3) The earning capacity of the parties.
> (4) The effect of custody of children upon a party's earning capacity.
> (5) The time necessary for the claimant to acquire appropriate education, training, or employment.
> (6) The health and age of the parties.
> (7) The duration of the marriage.
> (8) The tax consequences to either or both parties.
> (9) The existence, effect, and duration of any act of domestic abuse committed by the other spouse upon the claimant or a child of one of the spouses, regardless of whether the other spouse was prosecuted for the act of domestic violence.

796 So.2d 57, 62). "To bar modification of the duration and/or amount of spousal support, the consent judgment must evidence the intent of the parties to do so." *Gebhard*, 10-1412, p. 6, 60 So.3d at 721 (citing *Ray v. Ray*, 05-0873, p. 5 (La. App. 1 Cir. 3/23/07), 960 So.2d 174, 178). It is then incumbent upon the district court to "interpret the disputed provision[s] of the contract according to its text without reference to what might have been the result had the parties agreed to be governed by the applicable code articles." *Romero v. Romero*, 509 So.2d 681, 684 (La. App. 3 Cir. 1987).

Because this matter involves a consent judgment, the terms of the contract prevail over the default rules provided by the Civil Code for termination of spousal support. While we note that "the mere listing of events which will terminate spousal support does not evidence a clear intent that that amount of spousal support can never be changed," that is not the case here. *Williams*, 10-1087, p. 9, 55 So.3d at 958 (quoting *Ray*, 05-0873, p. 6, 960 So.2d at 178). The consent judgment in this matter explicitly provides that the "support payments are not subject to increase, decrease, or termination for any reason whatsoever, other than the death of [Mr. Shannon] or [Ms. Shannon], or as set out below." This term of the contract not only describes situations that will terminate the payments, but it also clearly states that there shall be no modifications such that no increases or decreases are allowed. Because the terms of the consent judgment govern and the terms directly address a potential modification, Ms. Shannon is not entitled to the hearing with evidence as would occur under default procedures for termination of spousal support found within the Civil Code.

***Retroactivity/Mr. Shannon's Answer to Appeal***

18

The final issue on appeal focuses on the date of retroactivity for the termination of spousal support. Ms. Shannon argues that the district court was correct in finding that, pursuant to La. R.S. 9:321(C), the proper date for retroactivity was the date of judicial demand, January 12, 2022. In response, Mr. Shannon contends that, because a consent judgment is a contract, the general rules governing contracts prevail over La. R.S. 9:321(C), cited by Ms. Shannon. Mr. Shannon likewise raises the issue of retroactivity in his Answer. In essence, he argues that: (1) the district erred court erred in applying La. R.S. 9:321(C) and finding that the date of judicial demand was January 12, 2022, rather than February 11, 2013—the day of the $1,650,000.00 payment; and (2) in the alternative, if La. R.S. 9:321(C) applies, the district court erred in finding the date of judicial demand was January 12, 2022, rather than July 17, 2020.[16] Because Ms. Shannon's third assignment of error and the errors raised by Mr. Shannon in his Answer are intertwined, we will address them together.

The termination clause in the consent judgment provides:

> These payments are only subject to termination upon the death of either party, or if Julia Westrich Shannon should inherit, be gifted, or in any other manner receive a sum of money equal to or in excess of $1,000,000 from any third party other than Jack Shannon within a two year period.

Relying on La. C.C. art. 1767, Mr. Shannon posits that based on the language of the termination clause in the consent judgment, his obligation to pay spousal support is dependent on the occurrence of an uncertain event. This clause, he argues, operates as a resolutory condition that automatically terminated his

---

[16] Mr. Shannon further requests that this Court find that he is entitled to reimbursement in the amount of $511,323, not $20,296.80, because Ms. Shannon received spousal support payments that were not due to her from May 2013 to May 2022; and alternatively, that he is entitled to reimbursement in the amount of $102,872, not $20,296.80, for his payment of life insurance premiums, which terminated retroactive to the date of judicial demand, July 17, 2020.

19

obligation to pay spousal support when that uncertain event occurred. Thus, Mr. Shannon contends, the date of retroactivity should be to the date of the occurrence of the uncertain event, or, in this case, April 25, 2013, the date of the $1,650,000.00 transfer. We find Mr. Shannon's reliance on the general rules of contract law to be misplaced.

La. C.C. art. 1767 provides that "[a] conditional obligation is one dependent on an uncertain event" and if said "obligation may be immediately enforced but will come to an end when the uncertain event occurs, the condition is resolutory." Further, La. C.C. art. 1776 provides that "[i]n a contract for continuous or periodic performance, fulfillment of a resolutory condition does not affect the validity of acts of performance rendered before fulfillment of the condition." While we do not dispute that a consent judgment is a contract, as discussed elsewhere in this opinion, specific statutes control over more broad and general statutes. *Treas*, 20-0050, p. 8, 364 So.3d at 290. Looking beyond the general rules on contracts, we note that "[e]xcept for good cause shown, a judgment modifying or revoking a final spousal support judgment shall be retroactive to the date of judicial demand." La. R.S. 9:321(C).

Although the facts of *Pellerin v. Pellerin* do not mirror the facts in the present case, we find it to be instructive on the issue of whether the application of La. R.S. 9:321(C) is applicable to consent judgments and judgments terminating spousal support. 17-0946, (La. App. 4 Cir. 6/6/18), 249 So.3d 77. In *Pellerin*, the parties separated in 2014 and, in April of 2015, Mr. Pellerin was ordered to pay Mrs. Pellerin child support and interim spousal support. In October 2015, the parties entered into a consent judgment, wherein Mr. Pellerin's child support was slightly reduced from the previous order of child support, and Mr. Pellerin agreed

20

to continue the spousal support payments in accordance with that previous order. On April 15, 2016, Mrs. Pellerin filed a rule for final spousal support, and on April 20, 2016, the judgment of divorce was rendered. Mrs. Pellerin filed a joint motion and order to continue the rule for final spousal support in October 2016, which contained the following provision: "[T]he parties agree to contractual spousal support on the same terms and conditions as the current interim spousal support order, which will last up and until the issue of Final Periodic Spousal Support is decided through trial or consent judgment." *Id.* at p. 2, 249 So.3d at 79. On December 15, 2016, the parties entered into a consent judgment, wherein Mr. Pellerin would continue to pay Ms. Pellerin child support and contractual spousal support in the same amount as the interim spousal support award. In January 2017, Mr. Pellerin filed a motion to modify based on a change in material circumstances. The matter came for hearing in May of the same year. The district court denied the modification as to the child support, and further held that Mrs. Pellerin was entitled to final spousal support payments retroactive to April 20, 2016, the date the judgment of divorce was rendered. On appeal, this Court addressed the date of retroactivity, laying out the law on consent judgments and La. R.S. 9:321. Under the facts of *Pellerin*, this Court applied subsections (B)(1)-(2) of La. R.S. 9:321, which provide:

> B(1) A judgment that initially awards or denies final spousal support is effective as of the date of the judgment is rendered and terminates an interim spousal support allowance as of that date.
> (2) If an interim spousal support allowance award is not in effect on the date of the judgment awarding final spousal support, the judgment shall be retroactive to the date of judicial demand, except for good cause shown.

In applying that law to the facts, this Court reversed the district court and found that, because the parties entered into a consent for Mr. Pellerin to pay contractual

21

spousal support until the issue of final spousal support was determined, interim spousal support continued to be in effect on the date the judgment for final spousal support was rendered. Thus, this Court held that the date of retroactivity of "the final spousal support award shall be the date upon which the trial court decided the issue of final spousal support, and the interim spousal support allowance is terminated as of that date." *Id.* at p. 5, 249 So.3d at 81.

In the case *sub judice*, Mr. Shannon filed his second motion to modify on January 12, 2022, seeking termination of spousal support based on the fulfillment of the $1,000,000.00 gift condition. Because the judgment terminating spousal support is in response to the second motion to modify and applying the mandates of La. R.S. 9:321(C), we find that the district court did not err in determining that the termination is retroactive to January 12, 2022, the date of judicial demand.

Having found that La. R.S. 9:321(C) is applicable to this case, we pretermit discuss of the remaining assignment of errors raised by Mr. Shannon in his Answer.

**DECREE**

For the aforementioned reasons, we affirm the district court's March 31, 2023 judgment.

**AFFIRMED**